**Phillip J. HARMON, Petitioner–Appellant,**

v.

**Charles RYAN, Warden, et al.,
Respondents–Appellees.**

**No. 91–15139.**

United States Court of Appeals,
Ninth Circuit.

Submitted July 23, 1991 *.

Memorandum Filed July 26, 1991.

Order and Opinion Filed Sept. 20, 1991.

Opinion Withdrawn March 26, 1992.

Decided March 26, 1992.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 3(f) and Fed.R.App.P. 34(a).

1458

Phillip J. Harmon, pro se.

No appearance for appellees.

Before: PREGERSON, D.W. NELSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The roots of this appeal lie in *Arizona v. Shattuck*, 140 Ariz. 582, 684 P.2d 154 (1984). In *Shattuck*, the Arizona Supreme Court was presented with the question of what an appointed counsel's obligations are under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), with regard to seeking discretionary review in the state supreme court of issues he believes are frivolous. The Court noted that the Arizona judicial "system is strained to the point that we cannot afford the luxury of repeated review of trivia or issues of small merit." 684 P.2d at 157. It then held that appointed counsel had no obligation to seek review beyond that of right in the state intermediate appellate courts, stating that "[o]nce the defendant has been given the appeal to which he has a right, state remedies have been exhausted." *Id.* Although *Shattuck* involved the scope of exhaustion necessary under *Anders*, its reasoning was much broader; after *Shattuck*, a reasonable defendant would have believed that he need not seek direct review in the Arizona Supreme Court in order to exhaust his state remedies for purposes of federal habeas review. The Arizona Supreme Court confirmed that such was the import of *Shattuck* in *Arizona v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989). In *Sandon*, that court said "[w]hile *Shattuck* involved a discussion of the role of counsel in cases appealed according to *Anders*, the considerations are the same when discre-

tionary review is sought in this Court pursuant to Rule 31.19 [governing review of court of appeals decisions affirming convictions].... When counsel, whether retained or appointed, has [exhausted his appeal as of right in the court of appeals], as counsel for Sandon did in this matter, the case in the Arizona courts is over." *Id.* 777 P.2d at 221. *Sandon* held that an Arizona prisoner who, in 1986, had not sought state supreme court review after his conviction was affirmed by the state court of appeals had nonetheless exhausted his state remedies for purposes of federal habeas review. *See id.*

Subsequently, we concluded that the Arizona Supreme Court was wrong. In *Jennison v. Goldsmith,* 940 F.2d 1308 (9th Cir. 1991), we pointed out that the exhaustion requirements of 28 U.S.C. § 2254 are a matter of federal law and then went on to hold that, because Arizona defendants were able to seek direct review in the state supreme court, they must do so in order to exhaust their claims. *See* 940 F.2d at 1311. As a result of *Jennison,* Arizona prisoners who, following *Shattuck,* had every reason to believe that they had properly exhausted their claims by obtaining direct review in the state's intermediate appellate courts, suddenly discovered that their claims were in fact *not* properly exhausted.

Phillip J. Harmon, the petitioner in this action, is just such an Arizona prisoner. In 1988, Harmon entered an *Alford* guilty plea to a charge of attempted kidnapping and was sentenced to five years probation. In 1989, he admitted that he had violated the terms of his probation and was sentenced to a ten-year term of imprisonment. He appealed to the Arizona Court of Appeals, which affirmed the trial court, but he did not seek review in the Arizona Supreme Court. The court of appeals then issued its mandate, stating that "no motion for recon-

sideration or petition for review was filed, and time has expired." Approximately a year later, however, Harmon filed a petition for special action in the Arizona Supreme Court. The Court dismissed the petition.

Harmon then filed a habeas petition in federal court, alleging that his plea was coerced, the sentencing judge was biased, and there was no factual basis for finding that he had violated the terms of his probation.[1] The district court noted that his claims had not been presented to the Arizona Supreme Court on direct review and that that court's rejection of his special action petition did not constitute a consideration of his claims on the merits. The district court then held that the petitioner had not properly exhausted his claims under § 2254, and therefore ordered the petition dismissed *sua sponte.* Harmon timely appealed.

 It is clear that Harmon's claims are exhausted. The exhaustion requirement may be satisfied in two ways: by showing either that no state remedies are available or that the state supreme court has been presented with a fair opportunity to rule on the merits of the claim. *Batchelor v. Cupp,* 693 F.2d 859, 862 (9th Cir. 1982), *cert. denied,* 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983). Harmon is no longer able to seek direct review in the state supreme court and failed to obtain review on the merits through state collateral relief; no additional state remedies remain open to him. *See Tacho v. Martinez,* 862 F.2d 1376, 1379–80 (9th Cir. 1988). As a result, his claims are exhausted. *See Batchelor,* 693 F.2d at 863 (holding that the petitioner's claims were exhausted because "[t]he time for seeking review of the judgment of the Oregon Court of Appeals had long since lapsed and

---

1. The record before us indicates that Harmon raised these three claims in his petition for special action, but the record does not specify which claims were presented to the Arizona Court of Appeals on direct review. The district court based its dismissal solely on the petitioner's failure to seek direct review in the Arizona Supreme Court. Because we find that the district court erred in that regard, we reverse. We

have no occasion, on the basis of the record before us, *see* Rule 5, Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, to consider whether Harmon may have procedurally defaulted in a different manner, such as by failing to present his claims on direct review in the Arizona Court of Appeals. The district court is free to consider such matters on remand.

state post-conviction relief was unavailable").[2]

■ Although Harmon's claims are exhausted, they are not properly exhausted. Where direct review is available in the state's highest court, failure to seek such review constitutes a procedural default even if review was afforded in the state's lower courts. *See Jennison,* 940 F.2d at 1311; *McNeeley v. Arave,* 842 F.2d 230, 231–32 (9th Cir.1988). Thus, the petitioner's claims are in procedural default.

■ The doctrine of procedural default is based on comity, not jurisdiction, and the federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross,* 468 U.S. 1, 9, 104 S.Ct. 2901, 2906, 82 L.Ed.2d 1 (1984). As a general matter, a procedurally defaulted claim will not be considered on a writ of habeas corpus without a finding of "cause and actual prejudice" for the default. *See id.* at 11, 104 S.Ct. at 2908. However, a federal court will not require a habeas petitioner to demonstrate cause and prejudice unless the procedural default is independent of the federal claim and is adequate to warrant withdrawal of federal relief. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). A procedural default is not "independent" if, for example, the state procedural bar depends upon an antecedent determination of federal law. *See Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985). Similarly, the procedural default is not "adequate" if the state courts themselves bypass the petitioner's default and consider his claims on the merits, *see, e.g., Walker v. Endell,* 850 F.2d 470, 473 (9th Cir.1987), *cert. denied,* 488 U.S. 926, 981, 109 S.Ct. 309, 530, 102 L.Ed.2d 328, 562 (1988), if the procedural rule appears to be discretionary, *see, e.g., Johnson v. Mississippi,* 486 U.S. 578, 587,

108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988); *Hill v. Black,* 932 F.2d 369, 373 (5th Cir.1991); *Armstrong v. Dugger,* 833 F.2d 1430, 1435–36 (11th Cir.1987); *cf. Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 234, 90 S.Ct. 400, 403, 24 L.Ed.2d 386 (1969), or, ordinarily, if the state fails to assert an interest in compliance with its procedural rules in the petitioner's federal habeas proceedings, *see, e.g., Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980). When a federal court determines that a procedural default either is not independent of federal law or is inadequate to warrant denial of federal relief, the petitioner's failure to comply with state procedures will be excused notwithstanding his failure to demonstrate cause and prejudice; in such case, the court may entertain the habeas petition.

■ At issue here is the requirement that there be some clearly defined method by which a criminal defendant may reasonably seek state court review of his claims. *See Young v. Ragen,* 337 U.S. 235, 239, 69 S.Ct. 1073, 1074, 93 L.Ed. 1333 (1949) ("We recognize the difficulties with which the Illinois Supreme Court is faced in adapting available state procedures to the requirement that prisoners be given some clearly defined method by which they may raise claims of denial of federal rights. Nevertheless, that requirement must be met."). When no such method is available to a criminal defendant or he cannot reasonably comply with the state procedural requirements, his noncompliance with state procedures will not be an adequate bar to habeas relief. For example, if under state procedures a criminal defendant cannot obtain review of his conviction without purchasing a transcript, then an indigent criminal defendant who cannot reasonably afford to pay for his trial transcript will be

---

2. Harmon's circumstances are therefore different than those in *Jennison.* In *Jennison,* we were uncertain whether there were still state remedies open to the petitioner and therefore we remanded to the district court for a determination whether Supreme Court review was procedurally barred under Arizona law. *See* 940 F.2d at 1312. In *Jennison,* the state procedural history was unclear; there was apparently no indication that the petitioner's time in which to seek direct review in the Arizona Supreme Court had expired or that the petitioner had sought state post-conviction relief. In Harmon's case, by contrast, it is clear that no additional state remedies are now available.

able to obtain federal habeas relief notwithstanding his failure to seek direct review of his conviction. *See Jennings v. Illinois,* 342 U.S. 104, 110, 72 S.Ct. 123, 126, 96 L.Ed. 119 (1951). The basic principle is that failure to follow state procedures will warrant withdrawal of a federal remedy only if those procedures provided the habeas petitioner with a fair opportunity to seek relief in state court.

We most recently addressed the case of a habeas petitioner who was not afforded a fair opportunity to seek relief in state court in *Kim v. Villalobos,* 799 F.2d 1317 (9th Cir.1986). In *Kim,* a California prisoner had failed to obtain state collateral review of his conviction because he was unable, proceeding *pro se,* to comply with the state rule that his claims be pleaded with particularity. We first noted that the state's pleading requirements were constitutional. *See id.* at 1321 (discussing *Twitty v. Smith,* 614 F.2d 325, 331 (2nd Cir.1979)). We then went on to hold that, because, in practice, those requirements prevented the petitioner from obtaining review of his claims, state process was "ineffective" and he was excused from complying with it. *Id.* We stated that "[n]o interest in judicial efficiency or federal-state comity would be served" by requiring compliance. *Id.; see also Hollis v. Davis,* 941 F.2d 1471, 1475–76 (11th Cir.1991) (holding that when a state prisoner is unable to comply with state pleading requirements by himself, and the state will not appoint a lawyer, the prisoner is excused from compliance).

■ Similarly, where there is reason for confusion or uncertainty with respect to state procedures, a procedural default may be inadequate to bar federal habeas relief. *See Bartone v. United States,* 375 U.S. 52, 54, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963) (per curiam) ("Where state procedural snarls or obstacles preclude an effective state remedy against unconstitutional convictions,

federal courts have no other choice but to grant relief in the collateral proceeding."). Thus, the Supreme Court has recently held that if the state procedural rule has not been clearly defined prior to the default, that default will not serve as an adequate bar to federal review. *See Ford v. Georgia,* —— U.S. ——, ——–——, 111 S.Ct. 850, 857–58, 112 L.Ed.2d 935 (1991). Even if the petitioner could theoretically have complied with state procedures, the fact that he could not reasonably have been expected to is sufficient to excuse noncompliance. The seminal statement of this rule is contained in Justice Rutledge's concurring opinion in *Marino v. Ragen,* 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947).[3] In *Marino,* Illinois post-conviction remedies were sufficiently confusing that an Illinois prisoner "[could] not intelligently select the proper way [to obtain review]." *Id.* at 568 (Rutledge, J., concurring). Such uncertainty, according to Justice Rutledge, was sufficient to excuse compliance:

The Illinois scheme affords a theoretical system of remedies. In my judgment it is hardly more than theoretical. Experience has shown beyond all doubt that, in any practical sense, the remedies available there are inadequate. Whether this is true because in fact no remedy exists, or because every remedy is so limited as to be inadequate, or because the procedural problem of selecting the proper one is so difficult is beside the point. If the federal guarantee of due process in a criminal trial is to have real significance in Illinois, it is imperative that men convicted in violation of their constitutional rights have an adequate opportunity to be heard in court. This opportunity is not adequate so long as they are required to ride the Illinois merry-go-round of *habeas corpus, coram nobis,* and writ of error before getting a hearing in a federal court.

**3.** Although only two other Justices joined his concurrence, Justice Rutledge's opinion has been cited with approval by numerous federal courts. *See, e.g., Granberry v. Greer,* 481 U.S. 129, 136 n. 8, 107 S.Ct. 1671, 1676 n. 8, 95 L.Ed.2d 119 (1987); *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971); *Carter v. Estelle,* 677 F.2d 427, 447 (5th Cir.1982), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *Codispoti v. Howard,* 589 F.2d 135, 140 (3rd Cir.1978); *United States ex rel. Smith v. Jackson,* 234 F.2d 742, 747 (2d Cir.1956).

*Id.* at 569–70 (footnotes omitted); *see also Carter v. Estelle,* 677 F.2d 427, 450–51 (5th Cir.1982) (holding that Texas post-conviction procedures were sufficiently confusing as to create a "procedural logjam" and that therefore defendants were excused from compliance), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983).

In the instant case, we must determine whether Harmon was afforded a fair opportunity to seek direct review in the Arizona Supreme Court—whether there were clearly defined procedures which informed him of a need to seek relief from that court. If not, then his failure to seek such review is not an adequate bar to federal habeas relief. Prior to Harmon's default, the Arizona Supreme Court in *Shattuck* had stated that "[o]nce the defendant has been given the appeal to which he has a right [i.e., in the state intermediate appellate court], state remedies have been exhausted." 684 P.2d at 157. After *Shattuck,* an Arizona defendant was reasonably certain to believe—quite justifiably—that after the Arizona Court of Appeals had considered his claims, his "state remedies ha[d] been exhausted," 684 P.2d at 157, and his "case in the Arizona courts [was] over," 777 P.2d at 221—in short, that for all intents and purposes, the Arizona Court of Appeals was the state's highest court. In *Kim,* a defendant's ignorance prevented compliance with state procedures; here, it is the law itself, and the defendant's presumed knowledge of that law (namely, of *Shattuck* or of the rule it purported to establish), that created the procedural obstacle. Certainly, the failure here is no less understandable than the failure in *Kim*—a defendant simply does not forfeit his rights by following the instructions, albeit erroneous, of the state. *See Raley v. Ohio,* 360 U.S. 423, 438–39, 79 S.Ct. 1257, 1266–67, 3 L.Ed.2d 1344 (1959) (holding that when the state has erroneously instructed the defendants that they were entitled to refuse to testify, they may not be punished for so refusing). Accordingly, we find that, after *Shattuck,* the state procedures for seeking discretionary review were in practice sufficiently ill-defined that noncompliance with them is excused. *See*

*Batchelor,* 693 F.2d at 863–64 (holding that, in view of the informal arrangement by which Oregon public defenders did not seek review of their clients' cases beyond Oregon Court of Appeals and Oregon Attorney General would routinely concede that state remedies had been exhausted, an Oregon prisoner who had failed to seek review in the state supreme court, was not barred from obtaining federal habeas relief by his procedural default).

From the foregoing it is clear that the district court erred in dismissing Harmon's petition on the basis of his failure to seek direct review in the Arizona Supreme Court. We therefore vacate the judgment of dismissal and remand for further proceedings in conformity with this opinion.

**VACATED AND REMANDED.**