Albert Ray BEAM, Petitioner–Appellant,

v.

David PASKETT, Warden, Idaho State
Prison–Boise, Respondent–
Appellee.

No. 90–35616.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 26, 1991.

Submission Vacated Aug. 16, 1991.

Resubmitted Nov. 7, 1991.

Decided June 12, 1992.

As Amended June 25, 1992.

David Skeen, Port Townsend, Washington, Gar Hackney, Lynn, Scott, Hackney & Jackson, Boise, Idaho, for petitioner-appellant.

Lynn E. Thomas, Deputy Atty. Gen., Boise, Idaho, for respondent-appellee.

Before NELSON, BOOCHEVER, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

In 1983, the petitioner, Albert Ray Beam, and Michael Shawn Scroggins were charged with the rape and murder of thirteen-year old Mondi Lenten. Each of the defendants, during the course of the proceedings, attempted to place the blame for the crime on the other, and a central issue in the case was which of the two was primarily responsible for the murder. For this reason, each defendant was represent-

ed by separate counsel. They were, however, tried jointly. Concerned that each defendant's statements, which inculpated the other, would not be admissible in the other's trial under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the state requested the court to empanel two juries to hear the case—the juries to sit simultaneously when issues relevant to both defendants were introduced and separately otherwise. The state trial judge, Edward J. Lodge, granted the request. Thus, for example, when testimony probative as to Beam but prejudicial as to Scroggins was introduced or Beam's counsel would cross-examine a witness, Scroggins' jury would be excused—and vice versa. Separate opening and closing arguments were given before each jury.

Beam's jury found Beam guilty of premeditated first degree murder and rape. Scroggins' jury convicted Scroggins of first degree murder, finding that he aided and abetted the crime but did not commit it directly, and also convicted him of attempted rape. Both defendants were acquitted on the separate enhancement charge of using a deadly weapon in the commission of a crime.

The trial judge sentenced Beam to death for murder and to 30 years in prison for rape. He sentenced Scroggins to death for murder and to ten years in prison for attempted rape. In both cases, he relied on three statutory aggravating circumstances, one being that "the defendant exhibited utter disregard for human life."

Both defendants appealed to the Idaho Supreme Court. Beam's conviction and sentence were upheld in *State v. Beam*, 109 Idaho 616, 710 P.2d 526 (1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986). The sentence of death in Scroggins' case was reversed, however. *See State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152, 1161 (1985), *cert. denied*, 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986). The state court held that, in light of the fact that Scroggins did not personally commit the crime, did not have a history of violent criminal conduct, had barely

reached the age of majority, and came from a troubled family, his sentence was disproportionate to the sentences of other Idaho capital defendants. *See id.* 716 P.2d at 1159–60. Scroggins' case was remanded to the state trial court for resentencing.

Judge Lodge recused himself from presiding over Scroggins' resentencing. First, he expressed disagreement with the Idaho Supreme Court's disparate treatment of Beam and Scroggins, stating that the actions of the two defendants were "equivalent" and that "the record in this case supports the conclusion that any disparity between Scroggins' and Beam's participation is a distinction with little difference." Next, he stated that "reasonable minds could not differ" about the fact that Scroggins deserved to die. Finally, reviewing the sentencing alternatives remaining in Scroggins' case—"a fixed sentence without chance of parole, with costs running between $28.00 and $55.00 per day, or a life sentence with eligibility of parole in ten years"—he concluded that none was "reasonable or acceptable to the conscience of this court." Accordingly, Judge Lodge determined to have no "further involvement in these matters." Scroggins was then resentenced by a different judge.

Following Scroggins' resentencing, Beam filed a petition for post-conviction relief and a motion for a reduction of his sentence, raising a number of constitutional issues. In addition, Beam moved to disqualify Judge Lodge from sitting in the post-conviction and sentence reduction proceedings. Judge Lodge summarily denied the disqualification motion and then rejected Beam's claims for relief. The Idaho Supreme Court affirmed. *See State v. Beam*, 115 Idaho 208, 766 P.2d 678 (1988), *cert. denied*, 489 U.S. 1073, 109 S.Ct. 1360, 103 L.Ed.2d 827 (1989).

Beam then filed a petition for writ of habeas corpus in the United States District Court for the District of Idaho. His petition was denied, and this timely appeal followed. We affirm his conviction but vacate his death sentence.

### The Constitutionality of Beam's Conviction

Beam contends that the use of dual juries during the simultaneous trial of Scroggins and himself violated his rights under the Fifth, Sixth and Fourteenth Amendment. In the absence of prejudice to the defendant, courts have on some occasions allowed the use of dual juries in non-capital cases. *United States v. Sidman*, 470 F.2d 1158, 1169–70 (9th Cir.1972), *cert. denied*, 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *see also Smith v. DeRobertis*, 758 F.2d 1151, 1152 (7th Cir.), *cert. denied*, 474 U.S. 838, 106 S.Ct. 118, 88 L.Ed.2d 96 (1985); *United States v. Lewis*, 716 F.2d 16, 19 (D.C.Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 492, 78 L.Ed.2d 686 (1983). We have never considered the question in connection with a capital case, but a number of courts have expressed serious reservations regarding the use of dual juries in any but the simplest of trials, *see, e.g., Scarborough v. State*, 50 Md.App. 276, 437 A.2d 672, 674–76 (1981); *State v. Corsi*, 86 N.J. 172, 430 A.2d 210 (1981). Our affirmance in *Sidman* was qualified by the statement that "our holding is not to be read as an endorsement of the 'experiment' that was carried out in this case," 470 F.2d at 1170.

■ We need not determine here whether use of a dual jury in a case resulting in capital punishment would be a ground for invalidating a conviction. Because we vacate Beam's death sentence on other grounds, we do not subject his trial to the exacting constitutional scrutiny required when a defendant's life will be taken. Although there are some procedural requirements that are imposed on capital trials regardless of the actual sentence received by the defendant, *see, e.g., Wiggerfall v. Jones*, 918 F.2d 1544, 1548–50 (11th Cir.1990), we believe that the level of constitutional scrutiny given to the state's use of a dual jury procedure is determined by the nature of the punishment the defendant will actually suffer rather than by the potential that existed at the outset of the trial. The dual jury procedure introduces additional complexity and likelihood of error into the trial and thereby impairs a defendant's ability to conduct his defense. For this reason, a dual jury verdict is inherently more dubious than an ordinary verdict—even in the absence of a showing of specific prejudice. The degree of unreliability is not dependent, however, upon whether the trial is a capital one or not. *Compare Beck v. Alabama*, 447 U.S. 625, 642–43, 100 S.Ct. 2382, 2392, 65 L.Ed.2d 392 (1980) (stating that jury verdicts following a failure to ₋ive a lesser included offense instruction are inherently more suspect in capital than non-capital trials). Whatever additional constitutional constraints exist on the use of dual juries in capital trials would be a consequence of the greater reliability demanded of verdicts upon which a sentence of death is based, and not upon any additional uncertainty created by the fact that the trial is capital in nature. Because we vacate Beam's death sentence, we analyze his challenge to the dual jury system under the standards applicable in non-capital cases.

■ We do not believe that the use of dual juries in a non-capital case is by itself grounds for reversal in a habeas case. Although we were careful not to sanction the continued use of dual juries when we affirmed a dual jury conviction in *Sidman*, 470 F.2d at 1170, our review of a state court conviction is ordinarily limited to violations of federal constitutional law; we may not exercise our supervisory powers in such a context, *see Estelle v. McGuire*, —— U.S. ——, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Thus, while it is possible that we would disapprove such a procedure as "inappropriate" if used by a federal district court, *cf. United States v. Alvarado*, 838 F.2d 311, 316 (9th Cir.) (holding that the district judge committed error by using an "inappropriate" jury instruction), *cert. denied*, 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988), we will affirm a state court dual jury verdict unless it violates the Constitution—specifically, we will affirm such a verdict (that does not serve as the basis for the defendant's execution) unless the defendant can demonstrate that he was

prejudiced by the use of the procedure. *See Smith v. DeRobertis*, 758 F.2d at 1152.

■ The issue, therefore, is whether Beam was prejudiced by the use of the dual juries. The district court determined that he was not. We agree. There is no indication in the record before us that Beam's defense was hampered or the prosecutor's case unfairly strengthened by the state's use of the dual jury trial.[1] We therefore reject Beam's challenge to the dual jury verdict in this case.[2]

### The Constitutionality of Beam's Death Sentence

Beam was sentenced to death pursuant to Idaho Code § 19–2515. Under this section, a person convicted of a capital offense may not be sentenced to death unless the court finds that at least one statutory aggravating circumstance is present. *See* Idaho Code § 19–2515(c). If the court finds such a circumstance, it "shall sentence the defendant to death unless [it] finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstance found and make imposition of death unjust." *Id.* Subsection (g) lists 10 statutory aggravating circumstances. *See* Idaho Code § 19–2515(g)(1–10).

The state court found three aggravating circumstances in Beam's case. First, it found that "[t]he murder was especially heinous, atrocious, cruel and manifested exceptional depravity." (Idaho Code § 19–2515(g)(5)). Next, it found that "the defendant exhibited utter disregard for human

life." (§ (g)(6)). Finally, it found that the defendant "has exhibited a propensity to commit murder which will probably constitute a continuing threat to society." (§ (g)(8)). Having found the requisite statutory aggravating factors, the court then sentenced Beam to death, stating that "[i]t is clear from the record and the facts of this case that the mitigating circumstances do not outweigh the gravity of the aggravating circumstances so as to make unjust the imposition of the death penalty."

In *Creech v. Arave*, 947 F.2d 873 (9th Cir.1991), we determined that one of the three statutory aggravating factors found to be present in Beam's case—that "the defendant exhibited utter disregard for human life"—was unconstitutionally vague. *See id.* at 882. In *Creech's* case, we vacated the death sentence and remanded for a new sentencing hearing because the state court had relied on the vague aggravating factor in determining that the mitigating circumstances did not outweigh the aggravating ones. *See id.* at 885; *see also Paradis v. Arave*, 954 F.2d 1483, 1495 (9th Cir.1992). We must determine whether the same remedy is required here.

### 1. Procedural Default

■ The state argues that Beam failed to fairly present the claim that the "utter disregard" aggravating factor is unconstitutionally vague to the Idaho Supreme Court and has therefore procedurally defaulted this claim. Accordingly, the state argues that Beam must demonstrate cause and prejudice for the procedural default

---

1. The state's use of dual juries rather than a single jury in the joint trial of Beam and Scroggins may have had a strategic element to it. When dual juries are used, it becomes more likely that both defendants will be convicted of the most grievous conduct alleged, thereby leading to the imposition of the death penalty on both. A single jury, on the other hand, may well assess relative blame, with the resultant imposition of a non-capital sentence on the less blameworthy of the two defendants. Any such strategic motivation has been rendered inconsequential here, however. Both juries did not convict their respective defendants of the same degree of criminal conduct; Scroggins was convicted of aiding and abetting. Further, the fact that we vacate Beam's sentence lessens our con-

cern regarding the consequences of any strategic motive that underlay the prosecution's choice of the dual jury system. *Cf. Fisher v. United States*, 328 U.S. 463, 485 n. 8, 66 S.Ct. 1318, 1329 n. 8, 90 L.Ed. 1382 (1946) (Frankfurter, J., dissenting) ("Federal judges are not referees in sporting contests. Their duty to keep a trial in the course of justice is especially compelling where the penalty for conviction is death.").

2. Nothing in this part of our opinion precludes Beam from raising this issue again if the state seeks to have the death penalty imposed on him following remand.

before a federal court may entertain the claim in a habeas proceeding.

As an initial matter, it appears that the state's assertion is incorrect. It is true that the Idaho Supreme Court's opinion in Beam's case never expressly refers to a constitutional challenge to the "utter disregard" factor. However, in the brief he filed in that court on direct review, Beam challenged the Idaho death penalty statute as unconstitutionally arbitrary, expressly adopting those arguments unsuccessfully pressed by Creech in his appeal before that same court and "commend[ing] them to th[e] Court for reconsideration." Creech, in his state appeal, had argued that the "utter disregard" aggravating factor was unconstitutionally vague. *See State v. Creech*, 105 Idaho 362, 670 P.2d 463, 471 (1983). Beam's adoption of Creech's challenge fairly presents the question of the constitutionality of the "utter disregard" factor to the Idaho Supreme Court, particularly in light of that court's recent adverse resolution of the question. *Cf. Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir.1981) (stating that a claim raised in a habeas petition need not be first presented to the state courts "if the highest state court has recently addressed the issue raised in the petition and resolved it adversely to the petitioner, in the absence of intervening United States Supreme Court decisions on point or any other indication that the state court intends to depart from its prior decisions"). Accordingly, the claim is not defaulted regardless of the fact that the Idaho Supreme Court did not expressly refer to it. *See Smith v. Digmon*, 434 U.S. 332, 333, 98 S.Ct. 597, 598, 54 L.Ed.2d 582 (1978) (per curiam).

Furthermore, even if the state were correct that Beam failed to fairly present the claim to the state supreme court, its argument that he must demonstrate cause and prejudice would nonetheless fail. As we have most recently reiterated, "a federal court will not require a habeas petitioner to demonstrate cause and prejudice unless the procedural default is independent of the federal claim and is adequate to warrant withdrawal of federal relief." *Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir.1992)

(citing *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989)). In this case, the state procedural bar is not independent of the federal claim.

■ Idaho Supreme Court review of Beam's death sentence was conducted pursuant to Idaho Code § 19–2827. Under this provision, the Idaho Supreme Court has an affirmative duty to review the entire record in a capital case to determine, *inter alia*, whether "the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." The state court must consider possible errors in sentencing that are not raised by the defendant or were not objected to at his trial. *See State v. Osborn*, 102 Idaho 405, 631 P.2d 187, 193 (1981) ("[W]e may not ignore unchallenged errors. Moreover, the gravity of a sentence of death and the infrequency with which it is imposed outweighs any rationale that might be proposed to justify refusal to consider errors not objected to below."). Indeed, the Idaho Supreme Court must review a capital defendant's death sentence even if the defendant brings no appeal at all. *See id.* 631 P.2d at 192–93.

At least six Western states in addition to Idaho have adopted some form of mandatory review as part of their death penalty procedures. *See* Ariz.R.Crim.P. 31.2(b); Cal.Penal Code §§ 1239(b), 1240.1(e)(1); Mont.Code §§ 46–18–307, 46–18–310; Nev. Rev.Stat. § 177.055; Ore.Rev.Stat. § 163.-150(1)(g); Wash.Rev.Code §§ 10.95.100, 10.-95.130. We have never considered the effect of any of these mandatory review provisions on a habeas petitioner's procedural default. We note, however, a distinction between the Idaho procedures and that of some of the other states. Idaho law establishes a mandatory review system in which the state supreme court is required to examine the record on its own initiative in order to determine whether certain specified types of errors occurred during sentencing. This review occurs even if the defendant himself raises no claims of such errors, *see Osborn*, 631 P.2d at 192–93. Because the reviewing court has statutory notice of the types of errors for which it is

required to examine the record, it is presumed that it has carried out its statutory obligations even when it does not expressly indicate in its opinion that it has done so. As a result, the court's affirmance of the defendant's sentence after mandatory review constitutes at least an implicit rejection of claims of error that fall within its obligatory review even if the defendant has not raised those claims. Other states have adopted mandatory review systems that differ in significant respects from Idaho's.[3]

Idaho is not the only Western state, however, to have adopted the requirement that its supreme court review death penalty sentences for specified types of error. Montana has mandatory review provisions that are identical in all relevant respects to Idaho's. In *Fitzpatrick v. State*, 194 Mont. 310, 638 P.2d 1002 (1981), the state supreme court construed those provisions, and explained the effect to be given its affirmance of a death sentence in light of them. The court held that its affirmance of a capital sentence constitutes an implicit rejection of all specific claims falling within the subject of its mandatory review authority and that any claim covered by the mandatory review statute must be deemed resolved against the defendant even if he did not raise that claim before the court and even if the court failed to address it in its opinion. *See id.* 638 P.2d at 1014. It further held that when the defendant raises such an issue on post-conviction relief, a court may rely on the earlier affirmance as an implicit rejection of the contention (even though it was not raised by the defendant in the earlier appeal) and "need not review th[e] issue further." *Id.* We see no reason why the identical Idaho provisions would be construed any differently by the Idaho supreme court.

The United States Supreme Court considered the effect of state mandatory re-view provisions similar to Idaho's on procedural defaults in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake*, the defendant had failed to raise the claim that he was entitled to assistance of a psychiatrist in his motion for a new trial. Oklahoma argued that this failure was an independent and adequate state ground for the denial of relief so that the Supreme Court lacked jurisdiction to review the claim. The Court disagreed. Under Oklahoma law, the state supreme court on direct review was required to examine the trial record for "fundamental error"—including all constitutional errors—notwithstanding the defendant's failure to properly raise them. According to the Court, this review rendered subsequent application of the procedural bar "depend[ent] upon an antecedent ruling of federal law." As a result, the state procedural bar was not "independent" of federal law and federal review was not precluded. *Id.* at 75, 105 S.Ct. at 1092. The court's rationale was that because "the state court must rule, either explicitly or implicitly, on the merits of the constitutional question," *id.*, a subsequent procedural bar would be a consequence of that court's failure to uphold the federal claim.

■ Construed in light of the mandatory review provisions of § 19–2827, the Idaho Supreme Court's affirmance of Beam's death sentence necessarily included not only a determination that none of the claims Beam raised had merit but further that his sentence of death was not based on any arbitrary factor. As reliance upon an unconstitutionally vague provision would constitute reliance on an arbitrary factor, the court "either explicitly or implicitly" concluded that the "utter disregard" aggravating factor was not unconstitutionally vague. Thus, here, as in *Ake*, application

---

**3.** For example, some other states have adopted procedures that may be better described as "automatic appeal" requirements rather than mandatory review ones. *See, e.g.,* Cal.Penal Code §§ 1239(b); 1240.1(e)(1). Under the automatic appeal type of procedure, the defendant is forbidden to waive his appeal to the state supreme court. *See Massie v. Sumner,* 624 F.2d 72, 74 (9th Cir.1980), *cert. denied,* 449 U.S. 1103, 101

S.Ct. 899, 66 L.Ed.2d 828 (1981). However, the content of the appeal does not appear to be prescribed by statute, and affirmance by the court does not appear to require rejection of any particular claims on the merits. A procedural default arising from a failure to present a claim pursuant to this type of appellate process would raise different issues than are presented here.

of the procedural bar depends upon an antecedent determination of federal law and does not constitute an independent and adequate state ground.[4] Accordingly, Beam may challenge the use of the "utter disregard of human life" aggravating factor in his federal habeas petition. *See Harmon,* 959 F.2d at 1461.[5]

### 2. Application of Creech to Beam's case

In *Creech,* we held that, even under the narrowing constructions given it by the Idaho Supreme Court, the "utter disregard for human life" aggravating factor, "as applied to Creech, was unconstitutionally vague." 947 F.2d at 883. Here, we must determine whether our condemnation of the state's use of the aggravating factor was limited to the manner in which it was "applied to Creech" or whether it also forbids its use in Beam's case.

We review aggravating factors for vagueness in order to ensure that the death penalty is not imposed in an arbitrary fashion, that "valid penological reason[s]" underlie the selection "from among the many criminal defendants [of] the few who are sentenced to death." *Spaziano v. Florida,* 468 U.S. 447, 460 n. 7, 104 S.Ct. 3154, 3162 n. 7, 82 L.Ed.2d 340 (1984). This "principle requires a State to 'channel the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death.'" *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 3099, 111 L.Ed.2d

606 (1990) (quoting *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)). Because we are concerned with the ability of an aggravating factor to rationally divide all capital cases into those for which the death sentence is appropriate and those for which it is not, we review the vagueness of an aggravating factor with regard to its application across the broad spectrum of capital cases and not with regard to the particular facts of an individual case. Thus, an aggravating factor that is impermissibly vague when applied to some capital defendants cannot be used in any capital case.

The above conclusion is mandated by the Supreme Court's decisions in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and *Jeffers,* 110 S.Ct. 3092. In *Maynard,* the Court held that in determining whether a limiting construction of an aggravating factor is unconstitutionally vague, it is irrelevant whether the factor clearly applies to the conduct of the defendant before the court; the analysis looks only at the limiting construction itself. *See* 486 U.S. at 361, 108 S.Ct. at 1857 (rejecting the argument that "if there are circumstances that any reasonable person would recognize as covered by the statute, it is not unconstitutionally vague" as applied to those facts). In *Jeffers,* the Court held that a limiting construction that is not unconstitutionally vague in general cannot be unconstitutionally vague "as applied" to a particular defendant. *See* 110 S.Ct. at 3101. Taken

---

**4.** Our decision in *Paradis* is not to the contrary. There, we refused to consider a death row habeas petitioner's claims of prosecutorial misconduct and improper venue because he had procedurally defaulted those claims by failing to raise them on direct appeal to the Idaho Supreme Court. *See* 954 F.2d at 1492–93. The mandatory review provisions of Idaho Code § 19–2827 apply only to errors underlying the imposition of the death penalty, not to errors underlying the conviction itself. Because the defaulted claims in *Paradis* involved the latter sort of error, § 19–2827 was not applicable. *See Paradis v. Arave,* 667 F.Supp. 1361, 1366 (D.Idaho 1987) (The exception to procedural default created by § 19–2827 "does not extend to every issue which may or may not arise as to pretrial and trial proceedings, but only applies to the sentencing procedure and death sentence."),

*rev'd in part on other grounds,* 954 F.2d 1483 (9th Cir.1992).

**5.** The state also argues that Beam may not rely on *Creech* in his habeas proceedings because that case constitutes "new law" under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). However, we have twice applied the rule in *Creech* retroactively on a writ of habeas corpus, *see Paradis,* 954 F.2d at 1495; *Creech,* 947 F.2d at 885, and we decline to reconsider that decision here, *cf. James B. Beam Distilling Co. v. Georgia,* ___ U.S. ___, 111 S.Ct. 2439, 2441, 115 L.Ed.2d 481 (1991) (plurality) (holding that retroactive application of a rule in one case "requires its application retroactively in later cases").

together, *Maynard* and *Jeffers* make it clear that the dispositive inquiry is whether a particular aggravating circumstance is unconstitutionally vague regardless of the particular facts of the individual defendant's case.

The above analysis demonstrates that *Creech*'s condemnation of the "utter disregard for human life" aggravating factor necessarily renders its use in Beam's case unconstitutional.

### 3. The Remedy For the State's Unconstitutional Action

Under Idaho law, the state court in a capital case determines the appropriateness of the death penalty in a particular case by weighing the aggravating circumstances against the mitigating ones. *See* Idaho Code § 19–2515. *Cf. Richmond v. Lewis*, 921 F.2d 933 (9th Cir.1990), *amended*, 948 F.2d 1473, 1487–89 (9th Cir.1992) (discussing Arizona death penalty statute that does not involve "weighing"), *cert. granted*, —— U.S. ——, 112 S.Ct. 1557, 118 L.Ed.2d 206 (1992). When the death penalty has been imposed as a result of such a weighing process, the subsequent elimination as invalid of one of the aggravating factors alters the balance and, as a result, renders the state court's prior determination that death is the appropriate penalty unreliable. *See Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 1450, 108 L.Ed.2d 725 (1990). Thus, our determination that an aggravating factor relied on by the Idaho court was unconstitutionally vague would ordinarily require us to vacate the death sentence. *See Creech*, 947 F.2d at 885.

In this case, however, the state trial judge made an additional finding with respect to the balancing process—that any one aggravating circumstance outweighed all the mitigating circumstances. In doing so, he first determined that "[t]he prognosis for any substantive rehabilitation is non-existent." This determination was based in substantial part on the fact that "[t]he defendant has a long history of deviant sexual behavior, including incest, homosexuality, and abnormal sexual relationships with women both older and younger

than the defendant." The court then found that, as a result of the defendant's poor chances for rehabilitation, "any one of the aggravating circumstances found by this Court to exist outweighs the mitigating circumstances." The state argues that this additional finding requires us to uphold Beam's death sentence notwithstanding the fact that one of the aggravating factors relied on by the state court was unconstitutionally vague.

■ We first consider whether the additional finding is violative of constitutional principles. The finding amounted to a determination that Beam's sexual history consisting exclusively of non-violent, consensual or involuntary conduct provides a valid penological basis for separating him from other capital defendants and placing him in the small group for which death is appropriate: a determination that an individual who has been the victim of incest, has engaged in homosexual activity, and has had "abnormal sexual relationships with women both older and younger" may be singled out for execution on the theory that he is a greater risk to society than most other first degree murderers. We believe the trial court's finding violates the Eighth Amendment of the Constitution.

■ Under the Eighth Amendment, a state may not make application of the death penalty depend upon a particular characteristic of the offense or the offender if selection of such a characteristic "makes no measurable contribution to acceptable goals of punishment." *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality); *see Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 2700, 101 L.Ed.2d 702 (1988) (plurality); *Tison v. Arizona*, 481 U.S. 137, 149, 107 S.Ct. 1676, 1683, 95 L.Ed.2d 127 (1987); *Enmund v. Florida*, 458 U.S. 782, 798–801, 102 S.Ct. 3368, 3377–3379, 73 L.Ed.2d 1140 (1982). As the Supreme Court noted in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), "[t]he death penalty is said to serve two principal social purposes: retribution and deterrence of capital crimes by prospective offenders." *Id.* at 183, 96 S.Ct. at 2930

(joint opinion of Stewart, Powell, and Stevens, JJ.). In addition, the Court noted that the death penalty may also serve the purpose of the "incapacitation of dangerous criminals," *id.* at 183 n. 28, 96 S.Ct. at 2930 n. 28, and has approved consideration of a defendant's future dangerousness, *see Jurek v. Texas*, 428 U.S. 262, 274–76, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (joint opinion of Stewart, Powell, and Stevens, JJ.). Thus, before a state may base its decision to execute a defendant on a defendant's particular characteristics, the state must demonstrate that its reliance on such characteristics serves to further its interest in retribution, in deterrence, or in the elimination of those likely to kill again.

■ It is clear that using Beam's nonviolent, consensual or involuntary sexual conduct as a basis for imposition of the death penalty serves no legitimate retributive purpose. The state may seek retribution only in relation to the blameworthiness of the actor in relation to the crime for which the state seeks to impose the death penalty. *See Tison*, 481 U.S. at 149, 107 S.Ct. at 1683. Although a capital defendant whose offense was motivated by a mercenary or racial animus might thereby be morally more culpable, *see, e.g., Barclay v. Florida*, 463 U.S. 939, 949, 103 S.Ct. 3418, 3424, 77 L.Ed.2d 1134 (1983) (plurality), no additional blame attaches to a capital defendant who has previously been the victim of incest, engaged in homosexual activity, or had "abnormal" sexual relations with women of ages different than himself. Thus, regardless of whether such conduct is protected by the Fourteenth Amendment, the Eighth Amendment prevents the state from seeking retribution on the basis of Beam's prior sexual conduct. *Cf. Bowers v. Hardwick*, 478 U.S. 186, 197, 106 S.Ct. 2841, 2847, 92 L.Ed.2d 140 (1986) (Powell, J., concurring) (noting that although homosexual sodomy was not protected under the Fourteenth Amendment, imposition of substantial punishment for engaging in such activity "would create a serious Eighth Amendment issue."). Simply put, a state may not use the death penalty as a mechanism for enforcing societal norms regarding sexual activity.

*See, e.g.,* Note, *Constitutional Barriers to Civil and Criminal Restrictions on Pre- and Extramarital Sex*, 104 Harv.L.Rev. 1660, 1667–68 (1991) (discussing the *Penry* standard); *cf. Dawson v. Delaware,* —— U.S. ——, 112 S.Ct. 1093, 1098, 117 L.Ed.2d 309 (1992).

Here, however, the state does not assert a retributive interest—or even a deterrent one—in Beam's sexual history but rather seeks to base a finding of future dangerousness on those events. When a state asserts a penological interest (here, future dangerousness) in conduct which it cannot punish directly, we must scrutinize its actions to ensure that they have an "appropriate relation to the safety of the state." *Herndon v. Lowry*, 301 U.S. 242, 258, 57 S.Ct. 732, 739, 81 L.Ed. 1066 (1937). Because the state may not impose the death penalty directly on the basis of a defendant's non-violent, consensual or involuntary sexual conduct, we must determine whether, as it asserts, Beam's particular sexual history is sufficiently related to the state's interest in the elimination of persons likely to commit future capital crimes that imposition of the death penalty on this basis is constitutionally permissible.

In *Dawson v. Delaware*, the Supreme Court recently scrutinized Delaware's imposition of the death penalty based in part on the defendant's membership in a racist prison organization. The Court first noted the state could not impose punishment directly for membership in the organization but that this prohibition does not necessarily preclude it from considering the defendant's membership if it is relevant to a permissible sentencing criterion. *See* 112 S.Ct. at 1097–98. "[A]ssociational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future." *Id.* at 1098.

The fact that associational evidence *might* be relevant to a defendant's future dangerousness was not, however, adequate

to uphold its use in Dawson's case. The state had failed to introduce any evidence related to his membership that went beyond "mere abstract beliefs on Dawson's part"—beliefs shielded from punishment by the Constitution. *Id.* Because the state had failed to introduce evidence demonstrating a link between Dawson's membership and future harmful conduct, there was a substantial danger that the sentencer had considered his membership solely because it found that membership "morally reprehensible." For this reason, the Court said, if the state wished to rely on Dawson's membership in a racist prison organization, it was required to introduce evidence regarding that membership that went beyond abstract beliefs. *See id.*

We think the same is true when the state seeks to rely on a defendant's non-violent, consensual or involuntary sexual conduct as a basis for its decision to impose capital punishment. In such case, there is a substantial danger that the sentencer will be swayed by his own moral disapproval of the conduct and will not rationally and impartially consider the relevance of the conduct to the defendant's future dangerousness. To ensure that the conduct is properly considered, the state must introduce more than the mere facts of the defendant's sexual history; specifically, the state must, at the least, introduce evidence demonstrating a close link between that history and the defendant's future dangerousness.

In Beam's case, there was *no* evidence before the trial court supporting the existence of a link, close or otherwise, between the facts that he was the victim of incest, had engaged in homosexual activity, or had had abnormal sexual relations with women of ages different than himself and the finding of future dangerousness. The psychological evaluation of Beam introduced in the sentencing hearing by the prosecution contains no suggestion that his sexual history indicated that he was likely to commit future violent acts. Nor does the presentence report draw a link between Beam's sexual experiences and a likelihood of future violence. Finally, there was no testimony to that effect during the hearing. In short, the trial judge's decision to draw a link between Beam's sexual experiences and future dangerousness was not based on any evidence of record.

To the contrary, the link appears to be the product of the trial judge's arbitrary pre-conceived attitudes. Beam's presentence report demonstrates that he was the victim of abusive sexual conduct and not an abuser himself. His incestuous relationship with his mother was forced upon him by his father. The only other indication in the record of force or violence in his sexual relations with others was an alleged incident in which an older woman with whom he was living supposedly "undressed him and tied him up [and] then brought ten girls to the house whereupon they all had sex with him." This incident is in all likelihood pure fantasy and in any event does not suggest that Beam was forceful or violent in his sexual behavior. In short, nothing in Beam's "long history of deviant sexual behavior" indicates a propensity for force or violence.

It goes without saying that society has abandoned its earlier belief that homosexuals present a danger to the community. It should also go without saying that victims of incest may not be further punished by making their misfortune the basis for their subsequent execution. As in *Dawson*, the danger here is too great that the sentencer merely found the behavior "morally reprehensible." After reviewing the record, we are left with the firm conviction that the state court's finding on which it based its conclusion that any single aggravating circumstance was sufficient to warrant Beam's execution was simply the product of the court's moral disapproval of Beam's sexual experiences. We do not believe the Eighth Amendment permits the state to send a man to his doom on the basis of a sentence that is so tainted with impermissible bias.

 There is no barrier to our consideration of Beam's Eighth Amendment rights on a writ of habeas corpus. As discussed above, the mandatory review provisions of Idaho Code § 19–2827 require the Idaho supreme court to review all death sen-

tences to ensure that the trial courts do not rely on any arbitrary factors. In this case, the state trial court's consideration of Beam's non-violent sexual history clearly constitutes reliance on such a factor. Accordingly, the state supreme court was required to review that aspect of the sentencing judge's actions. Under Idaho law, we must presume that the supreme court did so, and implicitly determined, albeit erroneously, that the state trial court's reliance on Beam's sexual history was proper. *See Osborn*, 631 P.2d at 192–93. As a result, any state procedural bar would be "depend[ent] upon an antecedent ruling of federal law." *Ake*, 470 U.S. at 75, 105 S.Ct. at 1092. Therefore, in accordance with our holding *supra* at 1570, Beam's federal habeas proceeding is not barred under the independent and adequate state ground doctrine.

In addition, *Teague* does not bar our application of the Eighth Amendment rule described above. *Teague's* bar against the application of new rules on a writ of habeas corpus does not apply to "rules forbidding criminal punishment of certain primary criminal conduct [and] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989). The state's interest in finality is not unduly hindered by retroactive application of such rules because " '[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.' " *Id.* (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (opinion of Harlan, J.)).

Our Eighth Amendment holding in Beam's case falls within this exception; both parts of the *Penry* analysis are applicable, separately and in combination. We hold that the state is forbidden to impose the death penalty on the basis of the sen-

tencer's moral disapproval of the primary conduct here involved, a defendant's sexual history that is unrelated to a legitimate penological goal. The error made by the state court was not that it used procedures that were later determined to be inadequate. Instead, the state court's error was wholly substantive in nature; it based the sentence in part on its own moral disapproval of Beam's past non-violent, consensual or involuntary sexual experiences. Because a death sentence ought never to rest on such a basis, there is little societal interest in finality here.

In sum, the trial judge's finding that Beam's sexual history demonstrated that there was no possibility of rehabilitation was based on the judge's moral disapproval of Beam's earlier, non-violent, consensual or involuntary sexual conduct and is consequently invalid. As that finding served as a basis for the court's conclusion that any one aggravating circumstance would outweigh all of the mitigating circumstances, that conclusion is also invalid. The only other basis on which the state court determined that Beam deserved the death penalty was its finding that all three aggravating circumstances, when combined, outweighed all the mitigating ones. However, we have determined that, when weighing all the aggravating and mitigating factors together, the state court impermissibly relied on at least one erroneous factor, the "utter disregard" aggravating circumstance. For these reasons, we cannot rely on the balancing of aggravating and mitigating circumstances performed in Beam's case, and his death sentence—which resulted from an invalid weighing of factors—must be vacated. *See Creech*, 947 F.2d at 885.[6]

### Conclusion

We affirm, for purposes of this appeal, the district court's denial of Beam's claim that the use of the dual jury system violat-

---

**6.** Beam also claims Judge Lodge was incapable of objectively considering his sentencing claims and that this denied him his constitutional right to an impartial judge both at sentencing and at the time of his post-conviction hearing. Because we vacate Beam's sentence on other grounds, we need not reach this claim. We note however, that Beam would be free to reassert this claim were Judge Lodge to preside over his resentencing. We decline to consider the claim in advance only because Judge Lodge has left the state bench.

ed his constitutional rights. We reverse the district court's conclusion that the "utter disregard for human life" aggravating factor used in Beam's sentencing was not unconstitutionally vague. We remand the case to the district court and direct the court to grant the petition on the ground that the state trial court relied on an improper aggravating circumstance and, moreover, committed constitutional error when it concluded on the basis of Beam's non-violent, consensual or involuntary sexual history that any single aggravating circumstance would be sufficient to outweigh all mitigating circumstances. The sentence will be vacated, and the state court will conduct new sentencing proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.