Jerry OLESEN, Plaintiff/Petitioner,

v.

Joseph CLASS, Warden, South Dakota State Penitentiary, Mark Barnett, Attorney General, State of South Dakota, Defendants/Respondents.

No. Civil 95–3014.

United States District Court,
D. South Dakota,
Central Division.

Jan. 17, 1997.

Timothy M. Engel, May, Adam, Gerdes & Thompson, Pierre, SD, for Olesen.

Ann C. Meyer, Assistant Attorney General, Pierre, SD, for Joe Class and Mark Barnett.

## ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

KORNMANN, District Judge.

Petitioner, an inmate at the South Dakota State Penitentiary, filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2254, and this Court previously assigned this matter to U.S. Magistrate Judge Mark A. Moreno, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Moreno filed a Report and Recommendation, Doc. 48, ("the Report") recommending that petitioner's amended petition for writ of habeas corpus, Doc. 19, be denied in all respects and dismissed with prejudice. A copy of the Report was served upon the parties as required by 28 U.S.C. § 636. Petitioner filed written objections thereto. Doc. 49.

The Court has made a de novo review of the record and transcripts herein and determines that petitioner's objections should be overruled and the findings and recommendations of Magistrate Judge Moreno as contained in the Report, Doc. 48, should be accepted and petitioner's amended petition for writ of habeas corpus, Doc. 19, be denied in all respects and dismissed with prejudice.

Petitioner's first objection to the Report is that petitioner's fundamental foundational arguments concerning L.Z.'s statements to Dr. Sutliff were not adequately addressed and Dr. Sutliff's interview with L.Z. was mischar-

acterized. This Court finds that the Report correctly discusses the test for determining whether admitted hearsay testimony is admissible pursuant to S.D.C.L. § 19–16–8 (similar to Fed.R.Evid. 803(4)), and therefore overrules petitioner's objection on lack of foundation. See Doc. 48 at 8–19. The Court, having reviewed Dr. Sutliff's testimony, finds that the characterization of Dr. Sutliff's interview with L.Z. as contained in the Report, Doc. 48 at 8–19, is accurate and therefore overrules petitioner's objection on this ground.

Petitioner's second objection to the Report involves the magistrate judge's conclusion that admission of the testimony of L.Z. did not violate the confrontation clause of the United States Constitution because the subject statements were not trustworthy. The Court agrees with the magistrate judge's findings as to the trustworthiness of these statements. See Doc. 48 at 10–19, and 26–28. Petitioner's second objection is therefore overruled.

Petitioner's third objection is that the magistrate judge erred in concluding that errors by petitioner's trial counsel concerning pretrial investigation and witness preparation were harmless because the truthfulness of L.S. was a central issue in the case. The magistrate judge concluded that although trial counsel's pretrial investigation and witness preparation were deficient, petitioner did not show that he was prejudiced by such deficiency to the extent that it had an adverse effect on petitioner's defense or the ultimate outcome of the case, or that the deficient performance undermined the result of the trial. See Doc. 48 at 31–35. The Court agrees with the magistrate's conclusion that trial counsel was not constitutionally ineffective because trial counsel called several witnesses for petitioner to attack L.S.'s credibility and her reputation for truthfulness or lack thereof, including L.S.'s brother, foster mother, aunt, mother and petitioner himself. The case cited by petitioner, *United States v. Azure*, 801 F.2d 336, 341 (8th Cir.1986), does not support petitioner's argument that the failure to fully and adequately prepare witnesses for testimony cannot be characterized

as harmless error. Petitioner's objection on this ground is overruled.

Petitioner's fourth objection relates to the magistrate judge's conclusion that trial counsel was not constitutionally ineffective in cross-examining L.S. about her prior inconsistent statements. As referenced in the Report, Doc. 48 at 35–38, trial counsel did cross-examine L.S. about her prior inconsistent statements. This Court agrees with the magistrate judge's conclusion that trial counsel's decision regarding the breadth of his cross examination of L.S. was a tactical decision and was a professionally reasonable judgment under the circumstances. *Id.* Petitioner's objection on this ground is overruled.

The fifth objection raised by petitioner is that the magistrate judge erroneously concluded that petitioner's trial counsel was not constitutionally ineffective in failing to object to the opinion testimony of Angini Tapscott. The magistrate judge concluded that trial counsel's performance was deficient for failing to object to Tapscott's testimony in light of the evidentiary rules and the case law in 1986. However, after considering several factors, the magistrate judge concluded that this deficiency did not prejudice petitioner to the extent that it rendered the result of the trial unreliable or the proceeding fundamentally unfair. See Doc. 48 at 38–46. The Court agrees with these conclusions.

Petitioner cites *Azure*, 801 F.2d at 341, in support of his argument that the erroneously admitted testimony of Tapscott was not harmless error. The court in Azure, supra, was considering whether the admitted testimony amounted to harmless error. In this case, the Court is considering whether the deficient performance of petitioner's trial counsel was "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Magistrate's Report contains numerous factors which the Court must evaluate in making this determination. See Doc. 48 at 42–43. The Court in *Azure, supra*, did not discuss these various factors in reaching its conclusion that the erroneously admitted testimony was not harmless error. In this case, a careful evalu-

ation of the appropriate factors leads to the conclusion that petitioner was not deprived of a fair trial. The trial result was reliable. Therefore, petitioner cannot establish ineffective assistance of his trial counsel. See Doc 48 at 38–46. Petitioner's objection on this ground is overruled.

Petitioner objects to the magistrate judge's conclusion that petitioner's trial counsel was not ineffective, considering the cumulative effect of trial counsel's claimed errors. Based on *Wainwright v. Lockhart,* 80 F.3d 1226, 1233 (8th Cir.1996), the Court overrules petitioner's objection because "[n]either cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." *Id.*

Based on all of petitioner's specific objections, petitioner objects generally to the conclusions and recommendations as contained in the Report. This objection is overruled based on the discussion above concerning petitioner's specific objections.

Now, therefore,

IT IS ORDERED:

(1) The Report and Recommendations For Disposition of U.S. Magistrate Judge Mark A. Moreno, Doc. 48, filed October 17, 1996, is hereby adopted as the Findings of Fact and Conclusions of Law herein.

(2) The objections of petitioner to the Report and Recommendation, Doc. 49, are overruled.

(3) Petitioner's amended petition for writ of habeas corpus, Doc. 19, is denied in all respects and dismissed with prejudice.

(4) Respondents's motion for more definite statement with respect to petitioner's amended petition for writ of habeas corpus, Doc. 29, is denied as moot.

(5) Respondent's motion to dismiss petitioner's amended petition for writ of habeas corpus for failure to exhaust state remedies or, in the alternative, to dismiss two of petitioner's procedurally defaulted claims, Doc. 31, is denied as moot.

1. Plaintiff/Petitioner, Jerry Lee Olesen, will be referred to as "Olesen" and Defendants/Respondents, Joe Class and Mark Barnett, will be referred to as "State".

## REPORT AND RECOMMENDATIONS FOR DISPOSITION

MORENO, United States Magistrate Judge.

## PRELIMINARY STATEMENT

References to the record in this case will be made using the docket number assigned by the Clerk to each document or set of documents filed (*e.g.,* Docket No. ——). References to the transcript of the state jury trial held on May 13, 1986 and to the grand jury proceedings held on November 24, 1986 and January 9, 1986 will be made using the abbreviations "TTr", "GrJ Tr(1)", "GrJ Tr(2)", respectively, followed by the page in the transcripts. Exhibits received into evidence at the May 13, 1986 jury trial will be referred to as "Tr Ex" followed by the letter designated for each exhibit. Citations to the settled record in the underlying criminal case (Haakon County Crim. No. 86–2) will be made using the letters "CrR" followed by the numbered page found in the record. References to the record of the *first* state habeas corpus case (Haakon County Civ. No. 87–18) and the *first* state habeas corpus hearing held on June 15, 1987 will be made using the abbreviations "HR(1)" and "HTr(1)", respectively, followed by the appropriate pages in the record or transcript. References to the record of the *second* state habeas corpus action (Haakon County Civ. No. 91–5) and to the *second* state habeas corpus hearing, held on May 22, 1993, will be referred to using the abbreviations "HR(2)" and "HTr(2)", respectively, followed by the corresponding pages in the record or transcript.

## INTRODUCTION

The above-captioned matter [1] was referred to this Court on September 26, 1995 by the District Court [2] pursuant to 28 U.S.C. § 636(b)(1)(B) for the submission to the latter Court of proposed Findings of Fact and

2. The Honorable Charles B. Kornmann, United States District Judge, presiding.

Recommendations for Disposition of the matter. Docket No. 20.

Having carefully reviewed and considered all of the records on file in both the state and federal court proceedings, and being fully advised in the premises, this Court does now make and propose the following Findings of Fact, Report and Recommendations for Disposition.

## PROCEDURAL HISTORY

On May 15, 1986, Olesen was found guilty of two counts of Rape in the Second Degree, two counts of Sexual Contact With a Child Under Sixteen Years of Age and one count of Rape in the Third Degree. CrR 53–57. He was sentenced to five consecutive three-year sentences or a total of fifteen years. CrR 63–70. After Olesen appealed his convictions, but did not submit a timely brief, the South Dakota Supreme Court determined that the appeal had been abandoned and dismissed the same. CrR 75. Approximately eight and one-half months later, on May 19, 1987, Olesen filed a petition for writ of habeas corpus in Haakon County Circuit Court. HR(1) 3; HR(2) 19–22. That same month, Olesen filed an amended petition for Writ of Habeas Corpus. HR(1) 5; HR(2) 22–24.

On June 15, 1987, an evidentiary hearing was held in Philip, South Dakota, before the state habeas court, the Honorable James W. Anderson, Circuit Court Judge, presiding. HTr(1). In an order (based on written findings of fact and conclusions of law filed on August 5, 1987), the habeas court denied Olesen's petition and amended petition, except to the extent that the trial court was directed to correct clerical errors in the judgments of conviction. HR(1) 16. Thereafter, the habeas court and the State Supreme Court denied Olesen's motions for the issuance of a certificate of probable cause to appeal. HR(1) 18, 19.

On December 11, 1987, Olesen filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the District of South Dakota, Central Division. HR(1) 25; HR(2) 234. The District Court, the Honorable Donald J. Porter, then Chief United States District

Judge presiding, subsequently entered an order dated August 31, 1988, remanding the habeas action to state court for resentencing to allow a new appeal period to accrue pursuant to *Loop v. Solem,* 398 N.W.2d 140 (S.D. 1986). HR(1) 25.

Following this, the trial court, the Honorable Donald L. Heck, Circuit Court Judge presiding, resentenced Olesen to the same sentence as he had originally received. CrR 87–89.

On September 29, 1988, Olesen filed a notice of appeal to the South Dakota Supreme Court. CrR 90. After considering the appeal on the briefs submitted and without oral argument, the Supreme Court affirmed Olesen's convictions. *State v. Olesen,* 443 N.W.2d 8 (S.D.1989) (*Olesen I* ).

Subsequently, on October 1, 1990, Olesen filed a *pro se* petition for writ of habeas corpus in federal court, alleging one ground for relief, namely, that the trial court abused its discretion by allowing a doctor to testify about the statements made to the doctor by a five-year-old child abuse victim during a medical examination seven and one-half months after the alleged incident. HR(2) 234. On November 5, 1990, Olesen amended his habeas corpus petition, and raised, *inter alia,* a second ground for relief, to-wit: ineffective assistance of counsel. *Id.* Olesen then amended his petition a second time on May 8, 1991, raising an entirely new ineffective assistance of counsel claim. *Id.* On February 4, 1993, the District Court, the Honorable Donald J. Porter, then Senior United States District Judge presiding, dismissed Olesen's federal petition without prejudice because Olesen had failed to exhaust all available, non-futile state remedies. HR(2) 235.

On April 6, 1993, Olesen filed a second state petition for habeas relief in Haakon County Circuit Court. HR(2) 6–24. On May 27, 1993, an evidentiary hearing was held in state court, the Honorable Patrick J. McKeever, Circuit Court Judge presiding. HTr(2). After issuing a memorandum opinion and entering findings of fact and conclusions of law, HR(2) 185–189, 232–45, the habeas court entered an order quashing the writ of habeas corpus, *id.* at 245. Olesen

thereafter moved for the issuance of a certificate of probable cause, *id.* at 246–47, and the habeas court granted the motion but only insofar as the same sought to appeal the question of ineffective assistance of counsel, *id.* at 257–58. Olesen then filed a notice of appeal as to the ineffective assistance of counsel issue on October 18, 1993. *Id.* at 264–65. In an opinion issued on November 30, 1994, the State Supreme Court affirmed the habeas court and denied Olesen's ineffective assistance of counsel claims. *Olesen v. Lee,* 524 N.W.2d 616 (S.D.1994) (*Olesen II* ).

On May 15, 1995, Olesen filed a *pro se* petition with this Court for habeas relief under 28 U.S.C. § 2254. Docket No. 3. Subsequently, Olesen moved for leave to file an amended petition, Docket No. 13, and the District Court granted the same in an order filed on August 22, 1995, Docket No. 18. Four days later, the District Court referred the matter to this Court. Docket No. 20.

## FACTS

In October and December, 1979, Olesen had sexual intercourse with his fourteen-year-old daughter, L.S., in Philip, South Dakota. TTr 61–71. Then, in May, 1985, Olesen again had sexual intercourse with L.S., this time in his truck, after turning on to an approach en route back home from a nearby bar. TTr 73, 76–80, 310–14. Later that same month, L.S., now nineteen years old, Tr. Exs A, B, observed Olesen in the family garage, kneeling beside her younger sisters, five-year-old L.Z. and three-year-old A.T., rubbing their vaginas with his fingers. TTr 30, 73–75, 244.

Olesen was indicted by a Haakon County grand jury on two counts of Second Degree Rape, two counts of Sexual Contact With a Child Under The Age of Sixteen, one count of Third Degree Rape, and one count of Tampering With a Witness. CrR 14–18. At trial, Dr. Willis C. Sutliff, a pediatrician, testified as to what L.Z. and A.T. said or otherwise indicated to him during the course of his examination of them some seven and one-half months after their molestation by Olesen. TTr 39–57. Defense counsel objected to Sutliff's testimony on hearsay grounds, but the trial court overruled the objections. TTr 15–

26, 37–39, 43–45, 49. Sutliff also testified that during the examination, he found an injury to L.Z.'s hymenal ring and a larger than normal vaginal opening. TTr 47–48. He concluded that L.Z. had been sexually abused. TTr 48. He saw no signs of sexual abuse, however, in his examination of A.T., and reached the opposite conclusion with respect to her. TTr 49–50.

The jury acquitted Olesen on the Tampering With a Witness charge, but found him guilty of the remaining five sex offenses. CrR 53–57, 65, 88.

Olesen subsequently filed a direct appeal and brought two separate habeas actions in state court (the latter one being appealed to the South Dakota Supreme Court) claiming:

1. That the trial court committed prejudicial error when it allowed Sutliff to testify as to inadmissible hearsay statements made to him by L.Z.;

2. That the admission of L.Z.'s statements violated the rights guaranteed to him by the Confrontation Clause of the Sixth Amendment to the United States Constitution;

3. That he was denied effective assistance of counsel guaranteed to him by the Constitution because trial counsel:

 a. failed to investigate and prepare for his defense by not contacting potential witnesses and by not properly preparing for witnesses called at trial;

 b. failed to exploit L.S.'s inconsistent grand jury testimony;

 c. failed to object to the rebuttal testimony of psychologist Angini Tapscott;

 d. failed to call other witnesses, including, but not limited to, psychiatrist Charles Lord and Pierre Police Chief Bill Abernathy to attack L.S.'s credibility; and

 e. failed to object to Sutliff and others' opinion that L.Z. and A.T. had been the victims of sexual abuse.

*Olesen I,* 443 N.W.2d at 9–12; HR(2) 85–89, 232–245; *Olesen II,* 524 N.W.2d at 617–20.

Olesen's amended petition before this Court raises the same claims that were earli-

er raised and decided in state court. *Compare* HR(2) 6–24 *with* Docket No. 19.

## EVIDENTIARY HEARING

■ In his pre-hearing memorandum, Olesen, for the first time, requests that this Court grant him an evidentiary hearing. Docket No. 43 at 27. Olesen was given two evidentiary hearings in state court on his post-conviction claims. HTr(1); HTr(2).

■ To merit an evidentiary hearing in federal court, Olesen must show cause and prejudice for his failure to adequately develop evidence, relevant to his claims, in the state court proceedings. *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8–12, 112 S.Ct. 1715, 1719–21, 118 L.Ed.2d 318 (1992); *Sidebottom v. Delo*, 46 F.3d 744, 750–51 (8th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 144, 133 L.Ed.2d 90 (1995). Olesen has not demonstrated, or even attempted to demonstrate, cause and prejudice, nor has he shown that he is entitled to an evidentiary hearing under applicable law or that the denial of such a hearing would result in a fundamental miscarriage of justice. *Jones v. Delo*, 56 F.3d 878, 884 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1330, 134 L.Ed.2d 481 (1996); *Williams v. Clarke*, 40 F.3d 1529, 1542–44 (8th Cir.), *cert. denied*, 514 U.S. 1033, 115 S.Ct. 1397, 131 L.Ed.2d 247 (1995); *see also, Mack v. Caspari*, 92 F.3d 637, 644 & n. 7 (8th Cir.1996). The assertions made by Olesen in his amended petition and pre-hearing memorandum do not, in and of themselves, present grounds for requiring an evidentiary hearing. *Sidebottom*, 46 F.3d at 750; *Williams*, 40 F.3d at 1543. His request for a hearing is therefore denied.

## ADMISSION OF L.Z'S STATEMENTS PURSUANT TO THE MEDICAL DIAGNOSIS/TREATMENT EXCEPTION TO THE HEARSAY RULE

■ Olesen challenges the trial court's decision permitting Sutliff to testify about statements L.Z. made to him, claiming that the admission of these statements constituted prejudicial error. The prosecution offered this testimony admittedly as hearsay but within the exception expressed in SDCL 19–16–8 (1978) (the functional equivalent to Fed. R.Evid. 803(4)) which reads as follows:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof are not excluded by § 19–16–4 insofar as reasonably pertinent to diagnosis or treatment, even though the declarant is available as a witness.

■ The crucial question under this rule and its federal counterpart is whether the out-of-court statements were "reasonably pertinent" to diagnosis or treatment. *State v. Moriarty*, 501 N.W.2d 352, 359 (S.D.1993); *State v. Orelup*, 492 N.W.2d 101, 106 (S.D. 1992); *State v. Garza*, 337 N.W.2d 823, 824–25 (S.D.1983); *United States v. Longie*, 984 F.2d 955, 959 (8th Cir.1993); *United States v. Renville*, 779 F.2d 430, 436 (8th Cir.1985). A two-part test has been developed and utilized by courts to answer this question. First, the declarant's motive in making these statements must be consistent with the purpose of promoting treatment; and second, the content of the statements must be such as is reasonably relied upon by a physician in treatment or diagnosis. *Lovejoy v. United States*, 92 F.3d 628, 632 (8th Cir.1996); *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *see also, Olesen I*, 443 N.W.2d at 9 *(citing Iron Shell)*.

After careful review of the record, this Court is satisfied that L.Z.'s motive in making her statements to Sutliff was that of a patient responding to inquiries from her physician designed to aid in diagnosis and promote treatment. *Renville*, 779 F.2d at 436–39; *Iron Shell*, 633 F.2d at 84–85; *see also, Orelup*, 492 N.W.2d at 106; *Garza*, 337 N.W.2d at 824–25. L.Z.'s statements were made while she was being examined by Sutliff in connection with allegations of sexual abuse.[3] TTr 37–39, 42–48, 50–51, 53–57; *see*

---

**3.** For cases involving statements of sexual abuse made by a child victim to a pediatrician during the course of an examination, *see Johnson v.*

*Lockhart*, 71 F.3d 319, 320–21 (8th Cir.1995); *Longie*, 984 F.2d at 958–59; *United States v. Balfany*, 965 F.2d 575, 578–80 (8th Cir.1992);

*Longie,* 984 F.2d at 958–59; *Dana,* 958 F.2d at 238–39; *see also, Moriarty,* 501 N.W.2d at 354, 358–59; *Orelup,* 492 N.W.2d at 103–06; *Matter of S.W.,* 428 N.W.2d at 522–23; *Garza,* 337 N.W.2d at 825. She had been to the doctor many times before, TTr 244, and was seen by Sutliff in his office, TTr 39. *Compare United States v. White,* 11 F.3d 1446, 1449–50 (8th Cir.1993); *Ring v. Erickson,* 983 F.2d 818, 820 (8th Cir.1992). While there, Sutliff talked to and interacted with L.Z., discussed the examination itself with her and explained to her "what [was] going to happen." TTr 37, 42–43. *Compare White,* 11 F.3d at 1449–50. While somewhat on the bashful side,· L.Z. answered Sutliff's questions, spoke clearly, communicated in an understandable manner and volunteered "that her daddy had hurt her." TTr 45–47, 56–57. Sutliff's questions of L.Z. were, for the most part, open-ended and focused on the existence and location of her pain and not the identity of the alleged perpetrator. TTr 45–56; *see Olesen I,* 443 N.W.2d at 9. L.Z.'s answers described what happened to her and were primarily concerned with "the inception or general character of the cause or external source" of her pain.[4] *Olesen, I,* 443 N.W.2d at 9; *see also Orelup,* 492 N.W.2d at 106; *State v. Bawdon,* 386 N.W.2d 484, 487 (S.D. 1986); *Garza,* 337 N.W.2d at 825. More importantly, L.Z. identified Olesen as the perpetrator on her own initiative, without leading and suggestive prompting by Sutliff, and did not waiver in her answers to Sutliff's questions, despite efforts by him to˙get her to do so. TTr 45–46; *see Balfany,* 965 F.2d at 580; *Orelup,* 492 N.W.2d at 106; *see also, McCafferty v. Leapley,* 944 F.2d 445, 449–52

(8th Cir.1991) (discussing these factors in the context of the residual exception to the hearsay rule and the Confrontation Clause), *cert. denied,* 503 U.S. 911, 112 S.Ct. 1277, 117 L.Ed.2d 503 (1992). How Sutliff explained his role and purpose to L.Z., how he asked her questions, and how and where he conducted the interview are matters that can provide evidence "that the child understood the physician's role in order to trigger the motivation to provide truthful information." *White,* 11 F.3d at 1450 (*citing United States v. Barrett,* 8 F.3d 1296, 1300 (8th Cir.1993)).

Significantly, L.Z. had been to the doctor for medical problems on several prior occasions (perhaps as many as ten), TTr 244, and knew or at least understood that she was talking to a doctor, TTr 36–37, 42–49, 56–57; *compare Ring,* 983 F.2d at 820. Moreover, her statements to Sutliff were part and parcel of his diagnosis and treatment of her and were made for one or more of the purposes enumerated in SDCL 19–16–8 (Fed.R.Evid. 803(4)). *See Longie,* 984 F.2d at 955; *Garza,* 337 N.W.2d at 825.

The fact that L.Z. was brought in to Sutliff, at the request of a social worker and/or one of the prosecutors and seen by him approximately seven and one-half months after the May 26, 1985 incident, does not unduly taint the reliability of her statements and render them inadmissible given the unusual intra-family dynamics of this case. L.S., an eyewitness to the incident, was fearful of Olesen, having been raped by him on at least three separate occasions and admonished on each ·occasion not to say anything. TTr 66–73, 78–81. L.Z.'s mother, who was a passive

---

*Dana v. Dept. of Corrections,* 958 F.2d 237, 238–39 (8th Cir.), *cert denied,* 505 U.S. 1225, 112 S.Ct. 3043, 120 L.Ed.2d 911 (1992); *Moriarty,* 501 at 354, 358–59; *Orelup,* 492 N.W.2d at 103–06; *Matter of S.W.,* 428 N.W.2d 521, 522–23 (S.D.1988).

4. With respect to the questions he asked and the answers L.Z. gave, Sutliff testified at trial as follows:

I asked her if she had ever been hurt around her bottom, and she replied that her daddy had hurt her. I then asked her where and she pointed to the vaginal area. I then asked if someone had, if her father had put his fingers in her and she nodded affirmatively. I then asked if it hurt and she again indicated affirmatively that it had hurt. I then asked her if she knew what a male organ was, what a penis was, and she indicated she knew the difference between the female and male and nodded that she knew what the male organ was. I think I referred to it as a male thing. She indicated she knew where that was located. I asked her if she had, if he had placed that in her and she indicated affirmatively again. I went through the questions a number of times to see that she didn't change her indications. She did not elaborate in detail, it was just, she did say that she had been hurt and when asked about the area, indicated that her vaginal area and nodded as I asked the questions. TTr 45–46.

participant in at least one of Olesen's sexual interludes with L.S.,[5] denied knowing about any sexual abuse involving L.S., L.Z. or A.T., and steadfastly maintained that Olesen was innocent of the charges. TTr 57, 228–43, 254–65. In light of these circumstances, it is easy to understand why L.Z.'s mother, even if she was apprised of the abuse incident, did not report the same or seek help for L.Z. from a doctor. It is also not surprising to see, in a family such as this one, a several-month hiatus between the molestation event and the revelation and confirmation (via a physician's examination) of the same. Therefore, in the context of this case, L.Z.'s statements were admissible even though she was referred to and examined by Sutliff more than seven months after being abused. *See United States v. Whitted*, 11 F.3d 782, 784, 787 (8th Cir.1993) (referral by tribal investigator to doctor more than two years after the last act of sexual abuse); *Balfany*, 965 F.2d at 575, 577–581 (referral by social worker to pediatrician seven or eight months after the sexual assaults); *Renville*, 779 F.2d at 432, 435–39 (referral by deputy sheriff to family practice physician several months after anal intercourse); *see also; United States v. George*, 960 F.2d 97, 98–100 (9th Cir.1992); *Olesen I*, 443 N.W.2d at 10 (*citing Matter of S.W.*, 428 N.W.2d 521 (S.D.1988)).

In addition, several other factors militate in favor of the finding that L.Z.'s motive, at the time she made her statements to Sutliff, was consistent with the rationale and purpose of SDCL 19–16–8 (Fed.R.Evid.803(4)). First, L.Z. had a better knowledge of human anatomy than the average five-year-old, TTr 47, and the description she gave of her encounter with Olesen had "the ring of veracity to it." *See United States v. Dorian*, 803 F.2d 1439, 1445 (8th Cir.1986); *see also, McCafferty*, 944 F.2d at 452 (child sexual abuse victim's knowledge and description of sexual activities was "exceptionally advanced for a girl of [the victim's] age and developmental level"). This, coupled with L.Z.'s young age, a factor that may substantially lessen the degree of skepticism with which her motives should be viewed, weighs in favor of the trustworthiness and admissibility of her declarations. *See Id.; Renville*, 779 F.2d at 441; *Roberts v. Hollocher*, 664 F.2d 200, 205 (8th Cir.1981); *Iron Shell*, 633 F.2d at 84. It is difficult to imagine that L.Z. had any motive to manufacture the lurid details of sexual abuse perpetrated by her own father. *See Dana*, 958 F.2d at 239; *Dorian*, 803 F.2d at 1445.

Second, L.Z.'s statements were corroborated by other evidence. The statements were consistent with the testimony of L.S., who identified Olesen as her rapist and the one who sexually abused both L.Z. and A.T. *Id.*

Finally, and more importantly, the accuracy of L.Z.'s statements is buttressed by the medical evidence. Sutliff testified, rather unequivocally, that the cause of L.Z.'s enlarged vaginal area and scarring to her hymenal ring was sexual abuse. TTr 47–48, 54–56. The results of Sutliff's examination make it difficult to believe that L.Z. had a motive to fabricate tales of sexual abuse in order to frame her father. Instead, Sutliff's testimony gives credence to and substantiates the overall reliability and trustworthiness of L.Z.'s statements.

With respect to the second prong of the *Iron Shell* test—whether the statements in issue are reasonably relied upon by health care providers in treatment or diagnosis—there can be little question that the information L.Z. provided to Sutliff would aid him in examining her by "pinpointing areas of the body to be examined more closely and by narrowing [the] examination by eliminating other areas." *Lovejoy*, 92 F.3d at 632 (*quoting Iron Shell*, 633 F.2d at 84). "Discovering what is not injured is equally as pertinent to treatment and diagnosis as finding what is injured." *Id.* Sutliff testified that information that is given to him by a patient is pertinent to his diagnosis and course of treatment. TTr 44. He also testified that in the area of sexual abuse, it is important to his

---

**5.** The record reflects that Olesen had sexual intercourse with L.S. in her bedroom some time after she was released from the hospital in December, 1979. TTr 69–73. During the intercourse, L.S.'s mother was in the room, watching, laughing and urging Olesen on. Then, once Olesen had climaxed and got off L.S., her mother began rubbing Olesen until he obtained an erection and then proceeded to have sex with him in L.S.'s presence. *Id.* at 71–73.

diagnosis and treatment recommendation to know how an injury may have occurred and who did it. *Id.* In fact, Sutliff recognized that he had a duty and responsibility to notify authorities of suspected child abuse in order to protect the child. *Id.; see also, Renville,* 779 F.2d at 438; *Olesen I,* 443 N.W.2d at 10 (Henderson, J., specially concurring); SDCL 26-10-10 (1985), -12 (1984), -12.1 (1985), and—12.2 (1984).[6] It was therefore reasonably pertinent to his diagnosis and treatment of L.Z. for him to know the details surrounding the incident for which she was being examined. Any claims to the contrary fly in the face of Sutliff's own testimony and applicable federal and state precedent. *Lovejoy,* 92 F.3d at 632; *Renville,* 779 F.2d at 436-38; *Iron Shell,* 633 F.2d at 84-85; *Orelup,* 492 N.W.2d at 106.

■ Although in *Iron Shell* the Eighth Circuit recognized that the declarant's statements relating to the identity of the alleged abuser "would seldom, if ever" be reasonably pertinent to treatment or diagnosis, 633 F.2d at 84 (*citing United States v. Nick,* 604 F.2d 1199, 1201-02 (9th Cir.1979)), the Appeals Court in *Renville* later observed that statements made by a child abuse victim, identifying the abuser as a member of the victim's immediate household, "presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it should not fall under the general rule," *id.* at 436. According to the *Renville* Court, such statements, when made in this context to a physician during an examination, "*are* reasonably pertinent to treatment." *Id.* The Court then went on to hold that:

> Statements of identity to a physician by a child sexually abused by a family member are of a type physicians reasonably rely on in composing a diagnosis and course of treatment. Admissions of these statements, therefore, is fully consistent with the rationale underlying the second component of the *Iron Shell* test.

*Id.* at 438. After *Renville,* statements made by a child to a physician during the course of an examination, identifying a family or household member as the abuser, are pre-

sumptively considered to be reasonably pertinent to diagnosis and treatment and, as such, satisfy the second component of the *Iron Shell* test. *Id.; United States v. Yellow,* 18 F.3d 1438, 1442 (8th Cir.1994); *Longie,* 984 F.2d at 959; *Balfany* 965 F.2d at 579; *United States v. Provost,* 875 F.2d 172, 176-77 (8th Cir.1989); *United States v. Shaw,* 824 F.2d 601, 608 (8th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988); *see also, United States v. Joe,* 8 F.3d 1488, 1493-95 (10th Cir.1993), *cert. denied,* 510 U.S. 1184, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994); *Moriarty,* 501 N.W.2d at 359; *Garza,* 337 N.W.2d at 825.

Here, L.Z. identified Olesen, her father and a household member at the time, as the person who sexually abused her in May, 1985. For the same reasons enunciated in *Renville* and its progeny, the trial court did not abuse its discretion in admitting L.Z.'s statements to Sutliff *in toto* under the medical diagnosis/treatment exception. *Id.; compare Olesen I,* 443 N.W.2d at 11-12 (Miller, J., concurring in result); *see also Moriarty,* 501 N.W.2d at 358-59.

■ Olesen argues that Sutliff's examination of L.Z. was intended, not for the purpose of treating her, but rather, to construct a criminal case against Olesen. Docket No. 43 at 4-7, 11-14. In support of his position, Olesen points to Sutliff's own testimony wherein he states that, "[t]he people that contacted me did not ask for treatment," and the fact that L.Z. was referred to Sutliff by a social worker and/or one of the prosecutors. *Id.; see also,* TTr 38. The record, however, reflects (1) that Sutliff examined L.Z. "to determine whether there was evidence of malnutrition, failure to thrive, child abuse and sexual abuse"; (2) that he diagnosed her as having a disease; and (3) that he made treatment recommendations. TTr 38, 44-46, 50-51; HTr(2) 144-46. The record also indicates that Sutliff considered L.Z.'s statements concerning "what happened" and "who did it" to be pertinent to his diagnosis *and* recommended course of treatment. TTr 44-45.

6. These statutes were subsequently transferred to another chapter of the South Dakota Code and now appear in § 26-8A-3, -8, -9,-10 (1991), respectively.

Yet, even assuming, *arguendo*, that no treatment was contemplated or given, L.Z.'s statements were nonetheless related to the cause of her present condition and were pertinent to Sutliff's diagnosis of that condition, and thus were admissible under the medical diagnosis/treatment exception. *United States v. Iron Thunder*, 714 F.2d 765, 772–73 (8th Cir.1983); *see also, Provost*, 875 F.2d at 177.

■ In any event, this exception to the hearsay rule applies to statements made for the sole purpose of diagnosis *and includes* statements, *made in anticipation of litigation*, to a doctor who is consulted only to testify as an expert witness. *Whitted*, 11 F.3d at 787; *Iron Thunder*, 714 F.2d at 772–73; *see also, Morgan v. Foretich*, 846 F.2d 941, 943 (4th Cir.1988); *see generally, United States v. Renville, Admission of an Identification Made to a Physician Under Fed. R.Evid. 803(4)*, 31 S.D.L.Rev. 726, 730–31 & nn. 47–57 (1986).

This Court concludes that under the circumstances present, there were sufficient indicia of L.Z.'s proper motive to ensure trustworthiness of her statements to Sutliff. Inasmuch as the statements were trustworthy and the type on which physicians reasonably rely in diagnosis or treatment, they satisfy the *Iron Shell* test and, accordingly, their admission was not an abuse of discretion.

### ADMISSIBILITY OF L.Z.'S STATEMENTS UNDER THE CONFRONTATION CLAUSE

The State maintains that Olesen is procedurally barred from obtaining relief on his Confrontation Clause because his trial counsel failed to object on this ground to the admission of L.Z.'s statements to Sutliff. Docket No. 47 at 1–8. A review of the record reveals that Olesen's trial counsel objected to L.Z.'s statements on hearsay grounds, but not under the Confrontation Clause. TTr 14–26, 37–39, 43–51. Olesen did not raise his Confrontation Clause on direct appeal, *see Olesen I*, 443 N.W.2d at 9, but did assert that the admission of L.Z.'s statements violated the Clause in the petition he later filed with the state habeas court. HR(2) 6–10. The habeas court chose, for whatever reason, to decide the merits of the Confrontation Clause claim under both the State and Federal Constitutions, HR(2) 186–87, 241–245, even in the face of the State's request to procedurally default the claim, HR(2) 116–17, 139–40. In its decision, the habeas court cited *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) and at least one state Supreme Court case, *State v. Orelup*, 492 N.W.2d 101, which in turn relied on and analyzed applicable United States Supreme Court precedent.[7] Olesen's motion for a certificate of probable cause to appeal his Confrontation Clause claim was denied by the habeas court, HR(2) 246–47, 257–58, and he did not file a separate motion with the South Dakota Supreme Court under SDCL 21–27–18.1 (1989) but rather proceeded with his appeal and those claims for which review was granted by the habeas court, *id.* at 264–65; *Olesen II*, 524 N.W.2d at 617–20.

Before Olesen's Confrontation Clause claim may be considered, this Court must examine whether he has overcome the two procedural hurdles of exhaustion and procedural default. *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554–55, 115 L.Ed.2d 640 (1991).

■ A state prisoner normally must exhaust all available state judicial remedies before a federal court will hear a petition for habeas corpus. *Coleman*, 501 U.S. at 731, 111 S.Ct. at 2554–55; *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); see *also, Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). This exhaustion requirement, codified in the federal habeas statute itself, gives

---

7. In *Orelup*, the South Dakota Supreme Court cited to and relied on *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); and *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) in determining that statements made by a four year old child to a pediatrician during the course of an examination regarding abuse inflicted on the child by the child's father were admissible under the medical diagnosis/treatment exception and did not violate the Confrontation Clauses of the State and Federal Constitutions. 492 N.W.2d at 104–06.

states the initial opportunity to correct any violations of prisoners' federal rights. 28 U.S.C. § 2254(b); *Coleman*, 501 U.S. at 731, 111 S.Ct. at 2554–55. A petitioner seeking habeas corpus relief has exhausted his available state remedies if he has procedurally defaulted his federal claims in the state court system. *Coleman*, 501 U.S. at 731–32, 111 S.Ct. at 2554–55; *see also, Engle v. Isaac*, 456 U.S. 107, 125–26, n. 28, 102 S.Ct. 1558, 1570–71 n. 28, 71 L.Ed.2d 783 (1982).

■ Olesen is no longer able to seek review from the South Dakota Supreme Court of his Confrontation Clause claim, *see* SDCL 21–27–18.1 (party has fifteen days from the date of entry of the circuit court judge's refusal to issue a certificate of probable cause to file a separate motion for the issuance of such a certificate with the Supreme Court) and has no remedies still available to him to pursue in state court. *See also,* SDCL 21–27–16.1 (1983); *Gregory v. Solem,* 449 N.W.2d 827, 830–31 (S.D.1989). Thus, he has properly exhausted the claim.[8]

■ While a habeas petitioner may have exhausted all of his state court remedies prior to filing for habeas review in federal court, the petitioner's constitutional claims may yet be barred from federal review if such exhaustion resulted from the petitioner's procedural default of the claims. Habeas petitioners can default their constitutional claims when they fail to raise claims during the course of their state judicial proceedings or when they fail to make their claims to the highest state court. *Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986).

■ The doctrine of procedural default is based on comity, not jurisdiction, and federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross,* 468 U.S. 1, 9, 104 S.Ct. 2901, 2906–07, 82 L.Ed.2d 1 (1984). As a general matter, a procedurally defaulted claim will not be considered absent a showing

of either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 749–50, 111 S.Ct. at 2564–65. A federal court, however, will not require a habeas petitioner to demonstrate cause and prejudice unless the procedural default is independent of the federal claim and is adequate to warrant withdrawal of federal relief. See *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989). A procedural default is not "independent" if, for example, the state procedural bar depends upon an antecedent determination of federal law. *See Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985). Similarly, the procedural default is not "adequate" if the state courts themselves bypass the petitioner's default and consider his/her claims on the merits, *see e.g., Antwine v. Delo,* 54 F.3d 1357, 1361 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996); *Dolny v. Erickson,* 32 F.3d 381, 383–85 (8th Cir.1994), *cert. denied,* 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995); *Bannister v. Armontrout,* 4 F.3d 1434, 1441 (8th Cir.1993), *cert. denied,* 513 U.S. 960, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994); *Evans v. Dowd,* 932 F.2d 739, 741 (8th Cir.), *cert. denied,* 502 U.S. 944, 112 S.Ct. 385, 116 L.Ed.2d 335 (1991); *Shaddy v. Clarke,* 890 F.2d 1016, 1017–18 (8th Cir. 1989); *see also, Walker v. Endell,* 850 F.2d 470, 473 (9th Cir.1987), *cert. denied,* 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988), if the procedural rule appears to be discretionary, *see e.g., Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988); *Dolny,* 32 F.3d at 383–84; *Evans,* 932 F.2d at 740–41, or, ordinarily, if the state fails to assert an interest in compliance with its procedural rules in the petitioner's federal habeas proceedings, *see e.g., Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980).

---

8. The State concedes, as it must, that Olesen's remaining claims were presented to and decided by the South Dakota Supreme Court, *see Olesen I,* 443 N.W.2d at 8–10; *Olesen II,* 524 N.W.2d at 617–20, and does not appear to dispute that Olesen's Confrontation Clause claim has been exhausted by virtue of his procedural default. Docket Nos. 32 at 7–10 & 34 at 16, 28–29, 33–35. Indeed, good reason exists for taking this position. *See Coleman,* 501 U.S. at 731–32, 111 S.Ct. at 2554–55; *Martin v. Solem,* 801 F.2d:324, 330–31 (8th Cir.1986).

"When a federal court determines that a procedural default either is not independent of federal law or is inadequate to warrant denial of federal relief, the petitioner's failure to comply with state procedures will be excused notwithstanding his failure to demonstrate cause and prejudice; in such case, the court may entertain the habeas petition." *Harmon v. Ryan,* 959 F.2d 1457, 1461 (9th Cir.1992); *see also, Coleman,* 501 U.S. at 729–35, 111 S.Ct. at 2553–57.

■■■ At issue here are two potentially viable procedural defaults: the failure to object at trial to L.Z.'s statements on Confrontation Clause grounds and the failure to file a separate motion with the South Dakota Supreme Court for the issuance of a certificate of probable cause to review the Confrontation Clause claim. Because the state habeas court chose to "bypass" his Confrontation Clause claim and decide it on the merits, Olesen is not precluded from obtaining review of the claim in federal court. *Bennett v. Angelone,* 92 F.3d 1336, 1347 (4th Cir.1996); *see also, Ylst v. Nunnemaker,* 501 U.S. 797, 801–06, 111 S.Ct. 2590, 2593–96, 115 L.Ed.2d 706 (1991); *Coleman,* 501 U.S. at 732–35, 111 S.Ct. at 2555–57; *Harris,* 489 U.S. at 262–63, 109 S.Ct. at 1042–44. The fact that the claim was never presented to or passed on by the South Dakota Supreme Court is of no consequence since the State was afforded "a full and fair opportunity to address and resolve the claim on the merits" before the state habeas court. *Dolny,* 32 F.3d at 384 (*quoting Keeney,* 504 U.S. at 10, 112 S.Ct. at 1720); *see also, Hogan v. McBride,* 74 F.3d 144, 145–47 (7th Cir.), *modified on denial of rehrg,* 79 F.3d 578 (7th Cir.1996); *Shaw v. Collins,* 5 F.3d 128, 131–32 (5th Cir.1993).

■■■ Likewise, inasmuch as Olesen, as with any other prisoner in South Dakota, is only entitled to discretionary review of his habeas claims by the State Supreme Court and has no appeal of right, *see* SDCL 21–27–18.1, he may now seek review of his Confrontation Clause Claim in federal court. *Dolny,*

32 F.3d at 383–84; *Evans,* 932 F.2d at 740–41; *Brown v. Armontrout,* 898 F.2d 84, 86–87 & n. 5 (8th Cir.), *cert. denied,* 498 U.S. 868, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990). Furthermore, the lack of any insistence by the State that Olesen first seek discretionary review from the State Supreme Court prior to requesting federal habeas relief merely underscores this conclusion. *See Harmon,* 959 F.2d at 1461.

Since the state habeas court's decision fairly appears to rest on federal law and/or is interwoven with such law, and that court was the last state court to enter judgment on Olesen's federal Confrontation Clause claim, the claim is properly before this Court and is neither procedurally barred nor subject to the cause and prejudice test of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[9] *Ylst,* 501 at 801–05, 111 S.Ct. at 2593–96; *Coleman,* 501 U.S. at 732–40, 111 S.Ct. at 2555–60; *Harris,* 489 U.S. at 263–64, 109 S.Ct. at 1043–44; *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638–39, 86 L.Ed.2d 231 (1985); *County Court of Ulster Co. v. Allen,* 442 U.S. 140, 147–54, 99 S.Ct. 2213, 2219–23, 60 L.Ed.2d 777 (1979); *see also, Jones v. Jerrison,* 20 F.3d 849, 853–56 (8th Cir.1994). The Court therefore will pass on the merits of Olesen's claim.

■■■ "Although the Supreme Court has emphasized the importance of face-to-face confrontation in criminal trials, it has also recognized that the Confrontation Clause neither bars the admission of all out-of-court statements, nor requires that all declarants be subject to cross examination." *Dana,* 958 F.2d at 238 (*quoting Dorian,* 803 F.2d at 1446). Whether a declarant is produced at trial or found to be unavailable is irrelevant for purposes of the Clause. *White,* 502 U.S. at 353–55, 112 S.Ct. at 741–42; *United States v. Inadi,* 475 U.S. 387, 392–400, 106 S.Ct. 1121, 1124–29, 89 L.Ed.2d 390 (1986). Indeed, the Supreme Court has

---

9. *Satter v. Leapley,* 977 F.2d 1259 (8th Cir.1992), cited by the State, is inapposite. In *Satter,* unlike the case at hand, the state habeas court did not rule on the merits of petitioner's claim, but instead found that the same had been "defaulted for failure to assert it at the proper time and in

the proper manner." 977 F.2d at 1263, n. 3. Because the merits of Satter's claim were never addressed by any state court and because the claim was abandoned by him, he was not able to utilize *Harris* and its progeny to overcome his procedural default. *Id.*

now made it clear that "unavailability of the declarant is not constitutionally required." *Ring*, 983 F.2d at 820; *see also, White*, 502 U.S. at 353–55, 112 S.Ct. at 741–42 (availability analysis necessary only when challenged out-of-court statements were made in an earlier judicial proceeding; if the declarant either is unavailable, or is available and produced for trial, the statements can be introduced); *Inadi*, 475 U.S. at 392–99, 106 S.Ct. at 1124–28; *Johnson*, 71 F.3d at 321; *Larson v. Nutt*, 34 F.3d 647, 648 (8th Cir. 1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995). What the Constitution does require, however, is that the hearsay statements "bear[ ] adequate 'indicia of reliability.' " *Wright*, 497 U.S. at 815, 110 S.Ct. at 3146. The reliability requirement can be met in either of two ways: "where the hearsay statement[s] 'fall[ ] within a firmly rooted hearsay exception,' or where [they are] supported by 'a showing of particularized guarantees of trustworthiness.' " 497 U.S. at 816, 110 S.Ct. at 3147 (*quoting Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539). " '[P]articularized guarantees of trustworthiness' must be shown from the totality of the circumstances." *Wright*, 497 U.S. at 819, 110 S.Ct. at 3148. The only circumstances which are relevant, however, are those surrounding the making of the statements, not the corroborative evidence of the act(s). *Id.*

■ In the instant case, the trial court admitted L.Z.'s statements to Sutliff under the medical diagnosis/treatment exception to the hearsay rule. TTr 25–26. This exception is a firmly rooted hearsay exception, and when hearsay testimony is properly admitted pursuant to it, reliability is inferred. *White*, 502 U.S. at 355–56 & n. 8, 112 S.Ct. at 742–43 & n. 8; *Wright*, 497 U.S. at 815, 820–21, 827, 110 S.Ct. at 3146–47, 3149–50, 3152–53; *Dana*, 958 F.2d at 239; *George*, 960 F.2d at 99–100; *Orelup*, 492 N.W.2d at 105.

■ Notwithstanding this, L.Z.'s statements possess sufficient "particularized guarantees of trustworthiness" to be admissible under the Confrontation Clause. Aside from the factors already identified and discussed herein, *see ante* at 1565–1569, other factors exist which individually, or in combination, bolster L.Z.'s credibility and the overall truthfulness of her statements. L.Z. spoke of her father doing something that "hurt" her and caused her pain, a startling event she had personal knowledge of and still recalled seven and one-half months after it occurred. TTr 45–46; see *United States v. N.B.*, 59 F.3d 771, 776–78 (8th Cir.1995); *Balfany*, 965 F.2d at 577–80; *Dorian*, 803 F.2d at 1444–45. *Renville*, 779 F.2d at 440–41; *Morgan*, 846 F.2d at 948. At no time did L.Z. ever recant her statements but, instead, reaffirmed the same when questioned further about them by Sutliff. TTr 45–46; *see N.B.*, 59 F.3d at 776–78; *Dana*, 958 F.2d at 239; *McCafferty*, 944 F.2d at 452; *Renville*, 779 F.2d at 439–41; *see generally*, M. Graham, *Federal Practice & Procedure: Evidence § 6775* at pp. 739–41 & nn. 9–10 (1992). L.Z. was examined by a pediatrician, who had specialized training and experience in dealing with child victims of sexual abuse and conducted his examination and questioning of L.Z. in a non-suggestive manner in accordance with established protocol. TTr 35–49; *see N.B.*, 59 F.3d at 776–78; *United States v. Grooms*, 978 F.2d 425, 427–28 (8th Cir.1992); *Balfany*, 965 F.2d at 580–82; *McCafferty*, 944 F.2d at 451–52; *Dorian*, 803 F.2d at 1444–45; *see also, George*, 960 F.2d at 100; *United States v. Eagle Thunder*, 873 F.Supp. 1362, 1377 (D.S.D.), *aff'd*, 51 F.3d 278 (8th Cir.1994), *cert. denied*, 514 U.S. 1076, 115 S.Ct. 1721, 131 L.Ed.2d 580 (1995). L.Z. gave childlike responses to Sutliff's questions. TTr 39–49, 51–60; *see N.B.*, 59 F.3d at 774, 777; *Grooms*, 978 F.2d at 427–28; *Balfany*, 965 F.2d at 582; *Dorian*, 803 F.2d at 1445. Finally, there is no evidence of corruption or coercion on L.Z.'s part in connection with the making of her statements or evidence that she had a proclivity for fabricating stories of sexual abuse so as to call into question her motive(s) for making the statements or the veracity of the statements themselves. *See Grooms*, 978 F.2d at 427–28; *Dana*, 958 F.2d at 239; *McCafferty*, 944 F.2d at 452; *George*, 960 F.2d at 100; *see also, United States v. Woosley*, 761 F.2d 445, 449 (8th Cir.1985); M. Graham, § 6775 at pp. 739–40 & n. 9.

After applying the Supreme Court's analytical framework found in *Roberts, Wright, White* and their progeny to the case at hand,

this Court concludes that the admission of L.Z.'s statements did not violate the Confrontation Clause. *N.B.*, 59 F.3d at 776–78; *Grooms*, 978 F.2d at 427–28; *Balfany*, 965 F.2d at 580–82; *McCafferty*, 944 F.2d at 451–52; *Dorian*, 803 F.2d at 1446–47; *Iron Shell*, 633 F.2d at 87. This being the case, Olesen's claim for habeas relief, premised on constitutional error under the Clause, must be denied.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

A. *Introduction and Standard of Review.*

Olesen claims that he received ineffective assistance of counsel. He points to three instances of alleged incompetent representation on the part of his trial counsel.[10] Docket No. 43. Each of these instances will be addressed *in seriatim.*

■ "The well-established framework for analyzing effective assistance of counsel claims reflects the Sixth Amendment's focus on assuring the 'fairness' and 'legitimacy' of our adversary system." *Payne v. United States*, 78 F.3d 343, 345 (8th Cir.1996) (*citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The *Strickland* standard, "although by no means insurmountable, is highly demanding." *Payne*, 78 F.3d at 345 (*quoting Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574, 2586–87, 91 L.Ed.2d 305 (1986)). The analysis is two-fold:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *see also, Fast Horse v. Class*, 87 F.3d 1026, 1028 (8th Cir.1996); *Freeman v. Class*, 911

F.Supp. 402, 405–06 (D.S.D.1995), *aff'd*, 95 F.3d 639 (8th Cir.1996).

■ With respect to the performance aspect of the *Strickland* test, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064–65. Judicial review of counsel's performance is highly deferential; a court must indulge a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065. For that reason,

Strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Id.* at 690–91, 104 S.Ct. at 2066. Moreover, as the Supreme Court has made clear, a court must "make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. at 2065; *see also, Carter v. Hopkins*, 92 F.3d 666, 669 (8th Cir.1996).

■ Professionally unreasonable trial errors, however, do not satisfy the burden of proving ineffectiveness absent a showing of prejudice to the defendant. *Strickland*, 466 U.S. at 691–92, 104 S.Ct. at 2066–67; *Driscoll v. Delo*, 71 F.3d 701, 706 (8th Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 273, 136 L.Ed.2d 196 (1996). A court will set aside the judgment of conviction only when counsel's deficient performance renders the result of the trial proceeding unreliable or fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *see also, Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Kimmelman*, 477 U.S. at 393, 106 S.Ct. at 2592 (Powell, J.,

---

10. In his amended petition for writ of habeas corpus, Olesen raised five ineffective assistance of counsel claims. Docket No. 19 at 5–7. He later abandoned two of these claims. Docket No. 43 at 25.

concurring). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him or her. *Fretwell,* 506 U.S. at 372, 113 S.Ct. at 844.

B. *Investigation and Preparation of Witnesses.*

 Olesen contends that L.S. was a crucial witness in the State's case against him. *See Olesen II,* 524 N.W.2d at 618. In an effort to destroy the State's key witness, Olesen called several witnesses to attack L.S.'s credibility and her reputation, or lack thereof, for truthfulness. *Id.* Olesen now argues that trial counsel was constitutionally ineffective because counsel did not contact potential defense witnesses or prepare those witnesses that were called in Olesen's case in chief at trial. Docket Nos. 19 at 5–6 & 43 at 19–22.

The record does support Olesen's assertion that trial counsel's pretrial investigation and witness preparation were deficient. Counsel failed to talk to or meet with Curtis Mills to discuss Mills's testimony before calling him to testify as a defense witness at trial.[11] HTr(2) 41–43. Counsel also failed to contact Tom Tassler, who, like Mills, had an opinion regarding L.S.'s lack of truthfulness, and never called Tassler as a witness at trial. HTr(2) 55–56. Similarly, counsel met with Sandra Tassler and Irene Odenkoven at the Haakon County Courthouse only minutes before they testified and while the trial was actually in progress. HTr(1) 20, 22–23; HTr(2) 47–58, 53, 59–61. Counsel did not tell Tassler what questions he intended to ask her, HTr(2) 48, and did little, if anything, to prepare Roy Olesen, another defense witness, and Odenkoven, in answering questions concerning L.S.'s honesty and truthfulness. HTr(1) 20, 22–23; HTr(2) 59–61, 64, 66.

In addition, it is readily apparent from a review of the trial transcript that defense witnesses were not well prepared. *See e.g.,* TTr 179–81, 194, 241–42. Roy Olesen's testimony is especially telling on this point:

11. In fact, the record reflects that trial counsel and Mills were staying at the same motel in Philip during the trial and that counsel waited

Q: Mr. Olesen, did you have an opportunity to observe [L.S.] off and on through the years?

A: Yes.

Q: Did you, in the course of that observation, form an opinion as to her reputation for truth and veracity?

A: Yes.

Q: And do you have an opinion as to what that is whether or not she was truthful in her statements?

A: I don't know for sure.

TTr 203. When trial counsel attempted to elicit a better answer from the witness, the prosecutor's objection was sustained. TTr 203–04. There thus can be little doubt that counsel's pretrial investigation and pretrial preparation were wanting and, more importantly, objectively unreasonable under the circumstances based on prevailing professional norms. *Olesen,* 524 N.W.2d at 618; *see also, Kenley v. Armontrout,* 937 F.2d 1298, 1303–04, 1308 (8th Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991); *Chambers v. Armontrout,* 907 F.2d 825, 828–31 (8th Cir.) (en banc), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990); *Lawrence v. Armontrout,* 900 F.2d 127, 129–30 (8th Cir.1990); *Wade v. Armontrout,* 798 F.2d 304, 306–07 (8th Cir.1986).

Yet, trial counsel's performance, even if professionally unreasonable, does not warrant the granting of habeas relief in this instance. Several defense witnesses testified at trial that L.S. possessed a distinct propensity to lie or be untruthful, including the following individuals:

1. L.S.'s brother, Richard Olesen, who testified that [L.S.'s reputation in his family as far as telling the truth] was "not very good" and that "there were many instances where she didn't tell the truth", TTr 155–56;

2. L.S.'s former foster mother, Tassler, who testified that "like a lot of children, [I] didn't trust her, didn't believe anything she said" and further testified that "[L.S.] did

until one minute before Mills testified to talk to him and then only asked him if he had lived with Olesen and when he did so. HTr(1) 24–26.

a lot of lying to me, which I found out the truth was different." [12] TTr 180;

3. L.S.'s aunt, Odenkoven, who testified that "[L.S.] could lie" and that she would do so on occasion, TTr 220;

4. L.S.'s mother, Marion Olesen, who testified that in her opinion, L.S. was "untruthful" and that this was her general way of conducting herself while she was at home, TTr 242; and

5. Olesen himself, who testified that, "I could not trust her with some of the things she told me", TTr 272.

In addition, the trial transcript is replete with references to L.S.'s drug usage, prior emotional and psychological problems and suicide attempts.[13] TTr 61–133.

This Court concurs with the assessment of the South Dakota Supreme Court insofar as the same pertains to the prejudice prong of the *Strickland* test:

Although this was not a textbook example of direct examination, the issue of L.S.'s credibility was still presented for the jury's determination . . . .

These witnesses stated their opinion at trial and, considering the cumulative nature of this evidence, Olesen has not shown a situation where counsel's performance was so deficient that the result of the trial is fundamentally unfair or unreliable. [Citations omitted].

*Olesen II*, 524 N.W.2d at 618.

Based on the evidence adduced at trial and the totality of the circumstances present, this Court is unable to conclude that Olesen was prejudiced by trial counsel's performance, that counsel's performance actually had an adverse effect on Olesen's defense or the ultimate outcome of the case, or that the performance undermined the result of the proceeding. *Strickland*, 466 U.S. at 693–96, 700, 104 S.Ct. at 2067–69, 2071; *Fretwell*, 506

U.S. at 369–72, 113 S.Ct. at 842–44; *Nave v. Delo*, 62 F.3d 1024, 1036–37 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996); *Sanders v. Trickey*, 875 F.2d 205, 207–12 (8th Cir.), *cert. denied*, 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 201 (1989); *Harvey v. United States*, 850 F.2d 388, 399–402 (8th Cir.1988); *Warden v. Wyrick*, 770 F.2d 112, 114–15 (8th Cir.), *cert. denied*, 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985). For these reasons, Olesen's claim must fail.

## C. *L.S.'s Prior Inconsistent Testimony.*

■■ Because of irregularities, Olesen was indicted on three separate occasions before he was ultimately brought to trial. HR(1) 15; *Olesen II*, 524 N.W.2d at 618. One day prior to the dismissal of the first indictment, L.S. appeared and testified before a Haakon County grand jury and changed her testimony. Id. She told the first grand jury that Olesen had rubbed her vagina in October, 1979 and had intercourse with her in August of that same year. GrJ Tr(1) 3–14; *Olesen II*, 524 N.W.2d at 618. During the second grand jury proceeding and at trial, L.S. testified that Olesen not only rubbed her vagina in October, 1979, but also engaged in sexual intercourse with her then. GrJ Tr (2) 4–8; TTr 64–69. *Olesen II*, 524 N.W.2d at 618. No reference was made by L.S. to the August, 1979 incident at the second grand jury session. GrJ Tr(2) 1–21; 524 N.W.2d at 618–19.

Olesen now claims that his trial counsel did not adequately cross examine L.S. about these inconsistencies. Docket Nos. 19 at 6 & 43 at 22–23. The trial transcript plainly indicates that counsel did cross examine L.S. about inconsistencies in her prior grand jury testimony. TTr 102–04, 116–17, 121–23; *see Olesen II*, 524 N.W.2d at 619 & n. 2. At the

12. Although an objection to the latter statement, *after* it was made, was interposed and subsequently sustained by the trial court, no motion or request was ever made to have the statement stricken from the record or to have the jury admonished not to consider the same. TTr180.

13. Prior to trial, trial counsel sought to offer evidence of L.S.'s prior sexual behavior to attack her credibility. TTr 6–14. The trial court ruled

that evidence of L.S.'s past sexual activity was not admissible, presumably under the State's rape shield statute. See SDCL 23A–22–15. TTr 14. Despite this ruling, counsel attempted to and succeeded in getting in evidence that L.S. had been sexually molested or raped by someone other than Olesen, TTr 186, but following an in chambers conference, this evidence was stricken and the jury was admonished not to consider it.

second habeas hearing, counsel testified: "I tried to impeach her as best I could. I pushed it as far as I thought I dared, to the jury." HTr(2) 13. Counsel, however, believed that the prosecuting attorney's direct examination "... pretty well handled the issue of [L.S.'s] inconsistencies before the grand jury, and so forth, to the point where it pretty much took any sting that I had in my cross examination of her out of the picture." *Id.* at 12. Counsel explained that his strategy was to attack L.S.'s credibility by showing that she was not a truthful person but rather, a "pathological liar". *Id.* at 12, 14, 28, 33. In doing so, counsel attempted to paint L.S. as a troubled girl with a history of suicide, medical and emotional problems, who told stories and did things to get attention in an effort to convince the jury that both she and her testimony were unreliable and not worthy of belief. Id. at 12, 14, 26–30; *see also*, TTr 85–125, 348–61. As part of this strategy, counsel called several witnesses, including a number of family members, who knew and associated with L.S., to demonstrate that she had a poor reputation for truthfulness and veracity, as well as a proclivity to lie and that her accusations were conjured-up falsehoods. Id. at 13–15, 30; TTr 155–56, 180, 220, 242, 348–61.

Trial counsel brought out every significant area of impeachment available during his cross examination of L.S. at trial. HTr(2) 96–97, 124–26. L.S. was a believable witness to whom the jury was very sympathetic. *Id.* at 97, 100, 124–26. As one of the prosecutors observed:

> "I think [counsel] drew out the inconsistencies in [L.S.'s] testimony the best he could, but he was handcuffed, you know Campbell [the other prosecutor] got most of those things out the best we knew [on direct examination]; he did go after her on the date, which subsequently we discovered she was mistaken by a day, on the—that May day, there was a school graduation or something, and they beat her up over that. He was persistent, I don't know how to put it, without going overboard."

*Id.* at 125.

Trial counsel testified that he did his best to impeach L.S., *id.* at 38, and felt that he went as far as he could without offending the jury. *Id.* at 29, 40. Counsel's decision regarding the breadth of his cross examination of L.S. and her prior inconsistencies was a tactical one and, from counsel's perspective at the time, would be considered "sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Olesen II*, 524 N.W.2d at 619; *see also*, *Bruns v. Thalacker*, 973 F.2d 625, 629–30 (8th Cir.1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1060, 122 L.Ed.2d 366 (1993); *Williams–Bey v. Trickey*, 894 F.2d 314, 316–17 (8th Cir.), *cert. denied*, 495 U.S. 936, 110 S.Ct. 2183, 109 L.Ed.2d 511 (1990); *Castillo v. United States*, No. 92–3982, 1993 WL 51181 **3–5 (S.D.N.Y.1993); *Dobbert v. Wainwright*, 593 F.Supp. 1418, 1431–36 (M.D.Fla.), *aff'd*, 742 F.2d 1274 (11th Cir.), *cert. denied*, 468 U.S. 1231, 105 S.Ct. 34, 82 L.Ed.2d 925 (1984); *cf.*, *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir.1995); *Flieger v. Delo*, 16 F.3d 878, 887 (8th Cir.), *cert. denied*, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994); *Mills v. Scully*, 826 F.2d 1192, 1195–97 (2d Cir.1987); *compare Driscoll*, 71 F.3d at 710 & n. 6. In the heat of battle, counsel made a strategic choice. This choice was a professionally reasonable judgment under the circumstances. Given the latitude counsel is afforded in making such decisions, the "highly deferential" standard of judicial scrutiny and the strong presumption of adequate performance, *see Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, trial counsel was not deficient or ineffective in failing to exploit L.S.'s prior inconsistencies through more vigorous cross examination.

Nor would trial counsel's exploitation of L.S.'s inconsistencies, most, if not all of which were explained during her direct examination at trial, have benefitted Olesen or had a significant effect on the outcome of the trial. HTr(2) 97–98, 124; TTr 61–85, *Strickland*, 466 U.S. at 693–96, 700, 104 S.Ct. at 2067–69, 2071; *Fretwell*, 506 U.S. at 369–72, 113 S.Ct. at 842–44. Accordingly, Olesen cannot prevail on his ineffective assistance of counsel claim.

*D. Angini Tapscott's Opinion Testimony.*

At trial, Olesen called numerous witnesses to impeach L.S.'s credibility. TTr 142–308.

Witnesses, including Olesen, testified about L.S. Is suicidal tendencies, drug usage, family problems, mental and physical maladies, and her lack of veracity. *Id.* Olesen even succeeded in eliciting testimony from L.S. herself about these matters. Id. at 85–126, 316–17. On rebuttal, the State called Angini Tapscott, a licensed psychologist and nurse, to describe symptoms suffered by women who have been sexually abused as children and to rehabilitate L.S.'s credibility. Id. at 319–21. Tapscott was allowed, without objection, to offer an opinion as to whether L.S. would fabricate a story involving sexual abuse.[14] *Id.* at 322. Olesen asserts that trial counsel was constitutionally ineffective because counsel failed to object to Tapscott's testimony. Docket Nos. 43 at 23–24 & 19 at 6–7. citing *United States v. Azure*, 801 F.2d 336 (8th Cir.1986) and *State v. Thomas*, 381 N.W.2d 232 (S.D.1986), he argues that Tapscott's testimony was inadmissible and prejudicial and put an "expert's stamp of truthfulness" on L.S.'s story. Docket No. 43 at 24–25.

"SDCL 19–14–9 [ (1978) ] prohibits witnesses from infringing upon a jury's function by testifying that another witness has testified truthfully." *Olesen II*, 524 N.W.2d at 620; see *also*,

*Thomas*, 381 N.W.2d at 239. Moreover, until 1993 [15], South Dakota limited an expert's ability to express an opinion as to the believability of a child abuse victim, and adhered to the general rule:

[T]hat one witness may not testify as to another witness's truth or credibility or truth-telling capacity because such testimony would invade the exclusive province of the jury to determine the credibility of a witness.

*Raymond*, 540 N.W.2d at 409–10 (*quoting McCafferty v. Solem*, 449 N.W.2d 590, 592 (S.D.1989); *State v. Bachman*, 446 N.W.2d 271, 274–76 (S.D.1989); *Vogt v. Billion*, 405 N.W.2d 635, 637 (S.D.1987); *State v. Logue*, 372 N.W.2d 151, 154–58 (S.D.1985); *State v. Jenkins*, 260 N.W.2d 509, 513–14 (S.D.1977); see also, SDCL 19–15–4 (1978); *State v. Lybarger*, 497 N.W.2d 102, 103–05 (S.D.1993); *State v. Swallow*, 350 N.W.2d 606, 609–10 (S.D.1984)).

■ Based on the evidentiary rules in existence at the time and applicable precedent, trial counsel should have objected to Tapscott's testimony and the question asked which generated the same. " '[I]t is hornbook law that the credibility of a witness and the weight to be given his testimony rests exclusively with the jury.' " *Azure*, 801 F.2d at 340 (*quoting United States v. Rosenberg*, 108 F.Supp. 798, 806 (S.D.N.Y.), *aff'd*, 200 F.2d 666 (2d Cir.1952), *cert. denied*, 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384 (1953)). An expert " 'may not go so far as to usurp the exclusive function of a jury to weigh the evidence and determine credibility.' " *Azure*, 801 F.2d at 340 (*quoting United States v. Samara*, 643 F.2d 701 (10th Cir.), *cert. denied*, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981) (*quoting United States v. Ward*, 169 F.2d 460, 462 (3d Cir.1948))). Given the evidentiary rules and the state of the case law in 1986, a reasonably prudent attorney in counsel's position would have objected to Tapscott's opinion testimony. By failing to do so, counsel's performance was deficient. *Strickland*, 466 U.S. at 687–91, 104 S.Ct. at 2064–67.

■ Having found that the first prong of the *Strickland* test has been satisfied, this

---

**14.** Specifically, the trial transcript reflects that the following exchange took place between one of the prosecutors and Tapscott:

Q: Now, based on your education, your experience in the area of working with sexually abused people and all the time that you have spent with [L.S.], do you have an opinion as to whether or not [L.S.] would fabricate a story involving sexual abuse?

A: No, she would not.

TTr 322.

**15.** In 1993, the South Dakota Supreme Court did away with the Ultimate Fact Doctrine and

adopted SDCL 19–15–4 (Fed.R.Evid.704) which states as follows:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The South Dakota Supreme Court, however, has emphasized that the new rule does not mean all expert opinion on the ultimate issue is admissible. *State v. Raymond*, 540 N.W.2d 407, 410 (S.D.1995) (*citing Zens v. Harrison*, 538 N.W.2d 794 (S.D.1995)).

**1578**

Court must next determine whether trial counsel's deficient performance prejudiced Olesen to the extent that it rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Fretwell*, 506 U.S. at 372, 113 S.Ct. at 844. In making this determination, the Court must "review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Maurer v. Department of Corrections*, 32 F.3d 1286, 1289 (8th Cir.1994) (*quoting Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir.1986)). As part of the review process, several important factors must be considered, including the following:

1. Whether the witness was an "impressively qualified expert," *see United States v. Roy*, 843 F.2d 305, 308–09 (8th Cir.), *cert. denied*, 487 U.S. 1222, 108 S.Ct. 2881, 101 L.Ed.2d 916 (1988); *Azure*, 801 F.2d at 340; *Bachman*, 446 N.W.2d at 275; *see also, Bachman v. Leapley*, 953 F.2d 440, 441–42 (8th Cir.1992); *McCafferty*, 944 F.2d at 453;

2. Whether the defense was able to counter the witness's testimony through cross examination or otherwise; *see Maurer*, 32 F.3d at 1289; *Roy*, 843 F.2d at 309;

3. Whether the testimony was rather obscure and isolated, or repeatedly solicited and reemphasized during the trial, *see Maurer*, 32 F.3d at 1289–90; *Bachman*, 953 F.2d at 442; *McCafferty*, 944 F.2d at 453; *Provost*, 875 F.2d at 176; *Roy*, 843 F.2d at 309;

4. Whether the testimony was offered in the prosecution's case in chief or on rebuttal, *see Olesen II*, 524 N.W.2d at 620;

5. Whether the evidence against the accused was overwhelming or close, *see Maurer*, 32 F.3d at 1289–90; *Adesiji v. State of Minnesota*, 854 F.2d 299, 301 (8th Cir.1988), *cert. denied*, 489 U.S. 1031, 109 S.Ct. 1168, 103 L.Ed.2d 226 (1989); *Roy*, 843 F.2d at 309; *Lybarger*, 497 N.W.2d at 105; *Thomas*, 381 N.W.2d at 239;

6. Whether the trial court instructed the jury that it was the sole arbiter of credibility, *see Bachman v. Leapley*, 953 at 442; *Adesiji*, 854 F.2d at 301; *Roy*, 843 F.2d at 309; *Lybarger*, 497 N.W.2d at 105; *Bachman*, 446 N.W.2d at 275; *Swallow*, 350 N.W.2d at 609;

7. Whether the testimony was persuasive, *see Maurer*, 32 F.3d at 1289; *Roy*, 843 F.2d at 309,

8. Whether the testimony was offered before or after the credibility of the victim was attacked, *see McCafferty*, 944 F.2d at 453;

9. Whether the defense was able to elicit testimony from witnesses (including the accused him/herself) concerning the victim's truthfulness, or lack thereof, and overall credibility, *see McCafferty*, 944 F.2d at 454;

10. Whether the witness was asked directly to give an opinion as to either the truthfulness of the victim or the veracity of the victim's story, *see McCafferty*, 944 F.2d at 454; *Provost*, 875 F.2d at 176; *Raymond*, 540 N.W.2d at 408–11 & n. 4; *Bachman*, 446 N.W.2d at 275; *Thomas*, 381 N.W.2d at 239; *Logue*, 372 N.W.2d at 154–58; *Jenkins*, 260 N.W.2d at 513–14; and

11. Whether the prosecution violated any court rulings, misrepresented its intentions or otherwise acted in bad faith with respect to the testimony, *see Raymond*, 540 N.W.2d at 408–11 & n. 3.

It must be remembered that "[m]ore than a finding of trial error or even of plain error is required to justify habeas relief on the basis of an evidentiary ruling." *McCafferty*, 944 F.2d at 452, (*citing Redding v. State of Minnesota*, 881 F.2d 575, 578 (8th Cir.1989), *cert. denied*, 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990)); *see Maurer*, 32 F.3d at 1289. Instead, a habeas petitioner must show that admission of the allegedly improper evidence "was so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [petitioner] of fundamental fairness." *Adesiji*, 854 F.2d at 300 (*quoting Manning–El v. Wyrick*, 738 F.2d 321, 323 (8th Cir.) (*per curiam*), *cert. denied*, 469 U.S. 919, 105 S.Ct.

298, 83 L.Ed.2d 233 (1984)); *see also, Maurer*, 32 F.3d at 1289; *Bachman*, 953 F.2d at 441; *McCafferty*, 944 F.2d at 452–53.

■ Although by no means clear cut, this Court agrees with the holding of the South Dakota Supreme Court that trial counsel's failure to object to Tapscott's testimony did not result in a fundamentally unfair trial or a verdict that was suspect. *See Olesen II*, 524 N.W.2d at 620. Tapscott's four-word opinion was offered in response to a single question asked on rebuttal after the defense had paraded a litany of witnesses before the jury attacking L.S.'s credibility. TTr 142–308, 322; *see McCafferty*, 944 F.2d at 453; *Provost*, 875 F.2d at 176; *Olesen II*, 524 N.W.2d at 620; *compare Maurer*, 32 F.3d at 1289–90. Tapscott's entire testimony was quite brief (spanning only seven pages in the trial transcript) and she was effectively cross examined by trial counsel. TTr 319–26; *see McCafferty*, 944 F.2d at 453–54. Her isolated comment was not the kind that was "likely to sweep the jurors off their feet." *See Roy*, 843 F.2d at 309; *compare Maurer*, 32 F.3d at 1289–91. Tapscott was the last witness to testify, and her testimony concerning whether L.S. would fabricate a story involving sexual abuse was never brought up or referred to again. *See Bachman*, 953 F.2d at 442; *Adesiji*, 854 F.2d at 300–01; *Roy*, 843 F.2d at 309; *compare Maurer*, 32 F.3d at 1289–90. At trial, the defense called several witnesses, including Olesen himself, who testified that L.S. was untruthful and could not be trusted, and succeeded in putting her credibility "in limbo". TTr 142–308; *see McCafferty*, 944 F.2d at 454. There is no evidence whatsoever that the prosecution violated any evidentiary rulings, acted in bad faith or attempted to exploit Tapscott's opinion testimony to its advantage. *Compare Raymond*, 540 N.W.2d at 408–11 & n. 3; *see also, Moriarty*, 501 N.W.2d at 358. Instead,

the record indicates that the prosecution made no objection to trial counsel's request to eliminate the proposed jury instruction relating to expert witness testimony.[16] TTr 333–34; HTr(2) 135. Significantly, the trial court in the end instructed the jury that it was "the sole and exclusive judges of all questions of fact and the credibility of the witnesses and the weight to be given the testimony of each of them." CrR 49; *see Bachman*, 953 F.2d at 442; *Adesiji*, 854 F.2d at 301; *Roy*, 843 F.2d at 309.

While Tapscott qualifies as being an expert under SDCL 19–15–2 (1978) (Fed.R.Evid. 702), she did not possess the "impressive" qualifications of the pediatrician in *Azure* and the foundation laid for her testimony was not lengthy or elaborate. TTr 319–20; *see Roy*, 843 F.2d at 308–09; see *also, Bachman*, 953 F.2d at 441–42; *Bachman*, 446 N.W.2d at 275. Similarly, although Tapscott was asked to express an opinion as to L.S.'s proclivity to fabricate stories of sexual abuse, she did not opine or testify that L.S. was truthful in her descriptions of the acts charged or that the same actually occurred. *See McCafferty*, 944 F.2d at 454; *Provost*, 875 F.2d at 176; *Bachman*, 446 N.W.2d at 275; *compare, Raymond*, 540 N.W.2d at 408–11 & n. 4; *Thomas*, 381 N.W.2d at 239; *Jenkins*, 260 N.W.2d at 513–14; *see also, Lybarger*, 497 N.W.2d at 104; *State v. Burtzlaff*, 493 N.W.2d 1, 5 (S.D.1992); *Logue*, 372 N.W.2d at 154–55. Finally, the evidence against Olesen was not overwhelming but nonetheless not scanty either. L.S. described in vivid detail the rape incidents and the sexual contact she observed between Olesen, L.Z. and A.T. TTr 65–80, 125–26, 129–33; *see Adesiji*, 854 F.2d at 301. Her testimony was corroborated by two witnesses (one of whom was Sutliff) and by medical and other documentary evidence. TTr 33–60, 135–138; Tr Exs A, B.

---

**16.** This instruction, taken from the South Dakota Criminal Pattern Jury Instructions, reads as follows:

A person is qualified to testify as an expert if he has special knowledge, skill, experience, training or education sufficient to quality him as an expert on the subject to which his testimony relates.

Qualified experts may give their opinions on questions in controversy at the trial. To assist you in deciding such questions, you may consider the opinion with the reasons given for it, if any, by the expert who gives the opinion. You may also consider the qualifications and credibility of the expert. You are not bound to accept an expert's opinion as conclusive, but should give to it the weight to which you find it to be entitled. You may disregard any such opinion if you find it to be unreasonable.
SDPJI (Crim) 1–15–5.

On balance, taking into account the factors set forth above in light of the entirety of the record, this Court is not convinced that trial counsel's professional errors or the challenged testimony itself prevented the jury from properly weighing the evidence and resulted in a trial and verdict that were fundamentally unfair or unreliable. *Fretwell*, 506 U.S. at 372, 113 S.Ct. at 844; *see also, Adesiji*, 854 F.2d at 301. As such, Olesen is not entitled to habeas relief on his ineffectiveness assertion.

E. *Cumulative Effect of Trial Counsel's Errors.*

 Lastly, Olesen argues that the errors alleged in his amended petition, taken both individually and collectively, were prejudicial and "cast doubt on the fundamental fairness of the [trial] proceedings." Docket No. 43 at 25–26. In *Harris v. Housewright*, 697 F.2d 202 (8th Cir.1982), the Eighth Circuit held that ineffective assistance of counsel could be found based on the cumulative errors of trial counsel. *Id.* at 204–12. The Appeals Court, however, later determined that *Harris* was no longer good law in light of the Supreme Court's decision in *Strickland. Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir.1991); *see also, United States v. Stewart*, 20 F.3d 911, 917–18 (8th Cir.1994). Now, errors that are not unconstitutional individually *cannot* be added together to create a constitutional violation. *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir.1996) (*citing Stewart*, 20 F.3d at 917–18), *cert. denied*, —— U.S. ——, 117 S.Ct. 395, 136 L.Ed.2d 310 (1996). In fact, the Court stated unequivocally that "[n]either cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." *Id.; see also, Wharton–El v. Nix*, 38 F.3d 372, 375 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1126, 130 L.Ed.2d 1088 (1995); *Griffin v. Delo*, 33 F.3d 895, 903–04 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995).

Olesen's argument, therefore, plainly has no merit.

**REPORT AND RECOMMENDATIONS FOR DISPOSITION**

After a careful review of the record in light of applicable precedent, this Court believes that Olesen is not entitled to relief under 28 U.S.C. § 2254 and that his amended petition must be dismissed. Accordingly, based on the foregoing findings of fact and legal discussion and pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), it is hereby

RECOMMENDED that the State's Motion for More Definite Statement with Respect to Olesen's Amended Petition for Writ of Habeas Corpus, Docket No. 29, be denied. It is further

RECOMMENDED that the State's Motion to Dismiss Olesen's Amended Petition for Writ of Habeas Corpus for Failure to Exhaust State Remedies or, in the Alternative, to Dismiss Two of Olesen's Procedurally Defaulted Claims, Docket No. 31, be denied as moot.[17] It is further

RECOMMENDED that Olesen's Amended Petition for Writ of Habeas Corpus, Docket No. 19, be denied in all respects and dismissed with prejudice.

Dated Oct. 17, 1996.

---

**17.** This recommendation is based primarily on Olesen's abandonment of the same two ineffective assistance of counsel claims (grounds iv and v in his amended petition, *see* Docket No. 19 at

7) as the State, in its dismissal motion, alleges are unexhausted and/or procedurally defaulted, *see* Docket Nos. 31, 32. *See also*, ante at 1573, n. 10.